DETERMINED IN THE

# FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS

## DURING THE YEAR 1904.

## South Chicago City Railway Company v. Frank T. Kinnare, administrator.

### Gen. No. 11,558.

1. STATUTE OF LIMITATIONS—*when, applies to additional count.* The rule is well settled that when by an additional count a new cause of action is introduced, the count is treated as a new suit, begun at the time when it was filed, and if such count was filed more than two years after the date of the injury complained of, the defendant may successfully plead the Statute of Limitations to that part of the declaration.

2. NEW CAUSE OF ACTION—*when additional count does not state.* Where the additional count merely alleges another way in which the negligence charged caused the death of the plaintiff's intestate, a new cause of action is not set up and the Statute of Limitations does not apply.

3. CONDUCT OF COUNSEL—*what considered in determining whether, constitutes reversible error.* In considering whether conduct of counsel upon the trial of a cause resulted prejudicially, the appellate court will not only make allowance for the heat of trial but, likewise in connection therewith, take into consideration the fact that the trial judge did not deem such conduct so prejudicial as to demand intervention by the granting of a new trial.

4. JUDGMENT—*how, regarded upon appeal.* Upon appeal nothing is presumed against the judgment, and intendments of fact, as well as presumptions of law, enter into the determination of its propriety.

5. MOTORMAN—*duty of, to avoid collision.* As soon as a motorman sees, or should see, that a dangerous situation has arisen, and that a collision is imminent, it is his duty, if he can, to get his train under control and to give suitable warning so as to avoid injury.

(1)

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook County; the Hon. JOHN L. HEALY, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed October 31, 1904.

JAMES W. DUNCAN and C. LE ROY BROWN, for appellant; C. C. GILBERT, of counsel.

WING & WING and JAMES C. MCSHANE, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

This appeal is prosecuted from a judgment rendered in the trial court against appellant for negligently causing the death of Paul Christensen. The accident happened about two o'clock in the afternoon of Sunday, May 24, 1896, on Stony Island avenue, which runs north and south, near Sixty-ninth street, in the city of Chicago. Appellant was then operating a double track street railway on that avenue. The north-bound cars ran on the east track. The two feet in width east of and adjoining the east rail of that track was separated from the street pavement by plank set edgeways. The space between the rail and the plank was partly filled with "slag," the surface of which was several inches below the level of the street pavement of the track. Next east of this plank the street for the width of either fifteen or sixteen feet (the evidence upon this point being contradictory) to the curb was paved with cedar blocks. The avenue and tracks were straight for a long distance north and south of the scene of the accident. The deceased was a business man aged thirty-six years at the time of his death. He had lived on the avenue south of Seventieth street for several years, and was well acquainted with the surroundings of the place where he was fatally hurt. On the day named he and one Peter Brask left the home of the deceased, each mounted upon a bicycle, and rode north upon the east side of the car tracks. The two men were going at a moderate pace, practically abreast, Brask being a few feet in advance. Deceased rode along the western half of this roadway and Brask along the eastern half. The block between Sixty-ninth and Seventieth streets, west

of the avenue, but not east, is split by Sixty-ninth place. Just after the bicycles had passed Sixty-ninth place they were met by a one-horse buggy, the horse trotting slowly, coming south in the middle of the roadway. This vehicle was on the wrong side of the highway. It should have been west of the car tracks. As the two men and the buggy approached, Brask turned to the east and the deceased turned to the west to pass it. When Brask, the buggy, and deceased were practically opposite, a train of appellant, consisting of an open grip and an open trailer, came from the south at "full speed," (admittedly ten to thirteen miles per hour), without other warning than the ringing of the gong as the train crossed Seventieth street, and attempted to pass them at a time when the deceased was so near the tracks that the "wabbling" of his wheel brought him into contact with the cars. The fall resulting therefrom caused his death.

This accident happened May 24, 1896. The declaration, consisting of one count, was filed January 7, 1897. It alleges that while "the said Paul Christensen was in the exercise of due and ordinary care for his own safety, the defendant through certain of its servants then and there in charge and control of one of its said electric street cars being operated by it upon said street railway, as aforesaid, then and there so negligently, carelessly and improperly ran, managed and operated said street car that said street car thereby then and there ran against and struck the said Paul Christensen and knocked him off his bicycle upon the ground," etc.

An additional count was filed January 30, 1902, which sets up that while "the said Paul Christensen was exercising ordinary care and caution for his own safety, the defendant, through certain of its servants, then and there in charge and control of one of its north-bound street cars, which it was then and there operating upon and along said street railway as aforesaid, then and there so negligently, carelessly and improperly ran, managed and operated said street car, that, as a direct result and in consequence thereof, said

Paul Christensen was brought in collision and contact with said street car, and was thereby then and there knocked off his said bicycle onto the ground there," etc. Appellant filed a plea of the Statute of Limitations to this count. To that plea a demurrer was interposed, which was sustained. Appellant urges that sustaining the demurrer was reversible error.

In cases like the one at bar the rule is well settled that when, by an additional count, a new cause of action is introduced, the cause is treated as a new suit begun at the time when the additional count was filed; and if such count is filed more than two years after the date of the injury complained of, the defendant may plead the Statute of Limitations to that part of the declaration. Phelps v. Ill. Cent. Ry. Co., 94 Ill. 557; C., B. & Q. Ry. Co. v. Jones, 149 Ill. 361; Fish v. Farwell, 160 Ill. 236; Eylenfeldt v. Ill. Steel Co., 165 Ill. 185.

The Supreme Court in Ill. Cent. Ry. Co. v. Campbell, 170 Ill. 163, defines the cause of action in a personal injury case " as the act or thing done, or omitted to be done, by the one by which an injury results to another." In Swift & Co. v. Madden, 165 Ill. 41, it is defined to be " The thing done or omitted to be done by one which confers upon another the right to sue—in other words, the act or wrong of the defendant towards the plaintiff which causes a grievance for which the law gives a remedy."

The negligence charged in each of the counts in question is the same, namely, that the defendant carelessly and negligently operated the street car. The injury in each count is also the same. In the first count it is alleged that the car, by reason of such negligence, ran against and struck the deceased; in the second count it is stated that by reason of such negligence the deceased was brought into collision and contact with such car. Here is no change in the cause of action. Nothing is done except to allege another way in which the negligence already charged caused the death of Christensen. The demurrer to the plea of the Statute of Limitations was properly sustained. C. & A. Ry. Co. v.

Henneberry, 42 Ill. App. 128; Ill. Cent. Ry. Co. v. Souders, 178 Ill. 588.

There is no reversible error in the conduct of counsel for appellee during the examination of the witnesses, or in his argument to the jury. We must not be understood to commend all that was said by counsel; but in the heat of a sharply contested trial counsel are apt to say things that were better unsaid. The court who tried the cause knew better than we can know whether what was thus said was prejudicial to the rights of appellant. This question, with others, was presented to him on the hearing of the motion for a new trial. If the court was convinced that prejudicial error had intervened in the trial, it was his duty to grant that motion. The fact that he entered judgment herein shows the learned trial judge did not consider the conduct of counsel constituted reversible error; and after an examination of the record we are of the same mind. N. Chi. St. Ry. Co. v. Cotton, 140 Ill. 502; Siebert v. People, 143 Ill. 591.

The questions of reasonable care upon the part of the deceased and of negligence upon the part of appellant, are primarily for determination by the jury under proper instructions. 2 Thomp. on Neg., 1450. It is elementary that we have no right to interfere with the finding of the jury upon these questions unless such finding is clearly and manifestly against the weight of the evidence.

The roadway east of the tracks and east of the two feet in width of "slag" was either fifteen or sixteen feet wide. Upon this question, the evidence being conflicting and apparently balanced, we must assume the narrower width as the correct measurement, for nothing is presumed against a judgment, but the inference is that it is right until the contrary appears. Graham v. Dixon, 3 Scam. 115. The evidence clearly preponderates that the buggy was driven straight south along the middle of this roadway. The width of the buggy from the outside of one hub to the outside of the opposite hub was five feet eight and one-half inches. There remained four feet seven and one-quarter

inches upon each side of the vehicle. The space occupied by the deceased, "a broad stocky man," with his wheel was at least two and one-half feet. The footboard of the car overlapped the rail fifteen inches. That left nine inches of the "slag" space clear, and, therefore, if the deceased rode one foot from the buggy, there remained between him and a passing car but one and three-quarters feet. It is not strange that deceased turned towards the track in passing the buggy. He was on that side of the roadway. A turn of a foot or two to the west gave him room to pass, while if he had followed Brask the turn would have covered five to eight feet, thus crossing the line of the approaching buggy. Counsel for appellant do not contend that in so doing the deceased ran into the line of the passing car. On the contrary they say: "From all the testimony it is obvious there was ample space between the buggy and the car for deceased to pass in safety if he had been a careful and capable rider." The motorman testifies that when he rang his bell at Seventieth street the deceased turned and looked south, and then rode north without looking back. The train was then 450 to 500 feet behind him. The same witness says that he did not again ring his gong until after the accident. The train was running at full speed, twelve to thirteen miles per hour. When deceased turned out to pass the buggy it was fifteen or twenty feet in front of him, and the train was about 150 feet behind him. There is no direct evidence that deceased then knew the speed at which the train was traveling nor how near it was to him. He had a right to presume that appellant would not be negligent by attempting to go by at a high and dangerous rate of speed without warning him of the approach of the train. The law does not impose upon one the duty of anticipating that another will be negligent. C. B. & Q. Ry. Co. v. Gunderson, 174 Ill. 498; C. C. Ry. Co. v. Fennimore, 199 Ill. 17. The evidence tends to prove, to such an extent as justified its submission to the jury, that just before and at the time of the accident deceased was in the exercise of ordinary care for his personal safety.

There is also evidence tending to prove that the servants of appellant were negligent in the operating and management of this train. The day was clear and the track was straight. There was no wagon or other obstacle on the highway that prevented the motorman from seeing the deceased, Brask and the buggy. The train was running at least twelve miles per hour, or seventeen and six-tenths feet per second. The gong was not sounded nor other warning given after leaving Seventieth street. The motorman knew when he was 150 feet away, or ought to have known, the situation in which the train, the buggy, Brask and the deceased would be placed, if he continued his speed and gave no warning of his coming. Others saw it. James L. Case, a passenger on the train, says: "I was leaning over, looking out. The forward end of that train was within about 150 feet of this buggy when I first leaned out. It was on account of the situation there in the street 150 feet ahead of the forward end of our car, made up of the relative situations of one buggy and two bicycles, that caused me to lean out there." Mary Scanlan, who stood upon the sidewalk opposite the place of the accident, testifies: "The reason I turned around was I thought there was quite a confusion with the bicycles and the buggy on the right side of the street. I expected something to happen, but not before I saw the car." Philip Buckley, called by appellant, a passenger upon this train says: "It occurred to me when we were 100 feet away, that he (deceased) was in a dangerous position." Mamie Graham, who was standing on the sidewalk with Mary Scanlan, swears: "I think the car was about half a block from the man when he turned towards the track, and I kept watching them from that time on." As soon as the motorman saw or should have seen the situation it was his duty to get his train under control if he could, and to give suitable warning, so as to avoid injuring the deceased, if that were possible. W. C. St. Ry. Co. v. Liderman, 87 Ill. App. 640; C. C. Ry. Co. v. Tuohy, 95 Ill. App. 316. That he could have controlled the movement of his train within that distance is shown

by the fact that he did stop it within 125 feet of the point where the accident happened. The evidence justified the submission to the jury of the question whether or not appellant's servant was guilty of negligence in the premises.

We find no reversible error in the giving or in the refusing of instructions.

The decision of this court in the former appeal is not *res judicata* upon the questions of fact that were then or are here raised.

There being no substantial error in this record, we affirm the judgment of the Circuit Court.

*Affirmed.*