## Netta Lakin, Appellee, v. South Side Elevated Railroad Company, Appellant.

### Gen. No. 17,104.

1. CARRIERS—*opening between platform and car.* Where there was an opening of sixteen to eighteen inches between the station platform of an elevated railway company and a car platform owing to a curve in the tracks, and plaintiff fell and was injured in consequence, the questions whether defendant was negligent in so operating its train or in failing to warn plaintiff of the presence of such opening, or in failing to have the place properly lighted, or whether plaintiff exercised due care, were all properly submitted to the jury, and their verdict finding defendant guilty is warranted.

2. PLEADING—*harmless error.* Where a demurrer to a plea of the statute of limitations to an additional count has been improperly sustained and no evidence is introduced which is not competent under the original counts, and the verdict is referable solely to the negligence of defendant as alleged in the original counts, no harm results to defendant from the error.

3. LIMITATIONS—*statement of new cause of action.* One of the tests for determining whether different counts state the same or a different cause of action is whether the same evidence will support the different counts.

4. PRACTICE—*improper conduct before jury.* Where plaintiff in an action for personal injuries, during her cross-examination, placed her head on her arm and began crying, was assisted into another room, and her husband later opened the door and within the hearing of the jury called in a loud tone of voice, "Doctor, doctor, I want a doctor quick," and the trial was suspended five minutes, when counsel for defendant failed to request the withdrawal of a juror and a continuance of the case, or a proper instruction on the subject, and ignored the incident until moving for a new trial, it is no ground for reversal.

5. VERDICT—*damages—excessive.* Verdict for $7,000 damages for injuries to a female passenger causing a miscarriage and subsequent neurasthenia *held* excessive and remittitur of $3,000 required.

Appeal from the Superior Court of Cook county; the Hon. WILLIAM H. McSURELY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed on condition; otherwise reversed and remanded. Opinion filed March 12, 1913.

WILLIAM R. MOSS and WILLIAM H. HAIGHT, for appellant; NOBLE B. JUDAH, of counsel.

HARPER E. OSBORN and ALBERT M. CROSS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an appeal from a judgment entered in the Superior Court in favor of appellee and against appellant for $7,000, as damages for personal injuries. There have been two trials of the case. The first trial resulted in a judgment for appellant upon a directed verdict, which judgment was here reversed upon appeal, and the cause remanded. 148 Ill. App. 268.

The original declaration contained seven counts, the first, third and sixth of which were withdrawn. The second count alleges that on November 11, 1905, appel-

lee became a passenger on the elevated railroad of appellant at the La Salle street station, to be carried to the Twelfth street station; that it was the duty of appellant to furnish a safe place for appellee to alight from its train; that when said train arrived at said Twelfth street station appellant negligently stopped said train at a place where there was a wide opening between the platform of the train and the platform of said station; that while appellee with all due care was attempting to alight from said trains she stepped in said opening and was injured, etc. The fourth count alleges, in addition, that upon the arrival of said train at said station, an employe of appellant in charge of said train announced the station and opened the gate of the car for appellee and others to get off, and that appellee while acting upon the invitation and under the direction of appellant, thus given, etc.

The fifth count contains the same allegations as the fourth, and further that it was the duty of appellant to have a good and sufficient light, so that said opening would be plainly visible; that said platform was dark, etc. The seventh count is the same as the fifth, except that it contains no allegation of the announcement of the station by an employe of appellant and of the opening of the gate and of the invitation to alight.

An additional count, filed after the reversal of the former judgment, and more than two years after the cause of action accrued, alleges a duty on the part of appellant to exercise due care in and about carrying appellee as such passenger and that while appellee was alighting from said train at said station, appellant so negligently managed, maintained and operated its said railroad, train and car, that by and through said negligence, appellee fell into a large opening between the platform of said car and the platform of said station, etc.

To this additional count appellant interposed a plea of the statute of limitations, and appellee's demurrer

to said plea having been sustained by the court, appellant elected to abide its plea. If, as is held in Wabash R. Co. v. Bhymer, 214 Ill. 579, one of the tests for determining whether different counts state the same or a different cause of action, is whether the same evidence will support the different counts, it may well be held that the plea of the statute of limitations to the additional count here involved, was not vulnerable to demurrer, and that the demurrer should have been overruled. The additional count charges negligence generally in the management and operation of the train and car, and evidence would be admissible thereunder of conduct on the part of appellant in various particulars, contributing to the injury to appellee, which was not admissible under the counts originally filed. Conceding, however, that the demurrer to the plea was improperly sustained, no harm resulted to appellant, because no evidence was introduced which was not competent under the original counts and the verdict of the jury is referable solely to the negligence of appellant as alleged in the original counts. Chicago & A. R. Co. v. Scanlan, 170 Ill. 106; Chicago City R. Co. v. Leach, 182 Ill. 352.

At about 6 o'clock, P. M., on November 11, 1905, appellee became a passenger on one of appellant's elevated trains at its La Salle street station, for the purpose of being carried to its Congress street station. The train consisted of five cars and appellee rode in the rear car. She inadvertently rode by the Congress street station and was informed that she might get off at the 12th street station and then return to the Congress street station, and decided to do so. She had only traveled upon the elevated railroad on two prior occasions, and had never boarded or alighted from a train at the 12th street station. When the train arrived and stopped at the 12th street station, the guard merely announced the station and opened the gate, and appellee with other passengers upon the crowded car

proceeded to alight from the rear platform of the car onto the station platform. Appellee was the last of the passengers to alight from the car, and immediately preceding her was a woman who wore a long trailing skirt. In stepping from the platform of the car, appellee failed to observe an opening 16 to 18 inches in width between that platform and the station platform, and stepped into such opening and fell upon the station platform and thus received the injuries complained of. Appellee was then assisted to her feet, and into the same train and carried to the station nearest to her home on 59th street.

Appellee testified that the car was lighted, but that the platform of the car and the station platform were dark; that while she saw the stairway in the station platform, immediately opposite the point where she attempted to alight from the car, the station platform was not lighted. Only one other witness attempts to narrate what occurred upon the occasion in question and to describe the conditions existing there, but his testimony concerning an occurrence observed by him, even if true, manifestly related to another and different occasion than the one in question. Upon the occasion with reference to which he testified, he said that while he was standing on the rear platform of one car, he saw a woman attempt to alight from the front platform of the following car at a point where it was lighted beneath the station platform; that he saw a woman step into the opening and fall forward on her hands and knees, and saw her get up and go down the stairway in the platform. His description of the woman, he claims to have seen is wholly at variance with any approximately accurate description of appellee, and he did not pretend to identify appellee, but expressly doubted his ability to do so. The jury were warranted in disregarding his testimony upon the ground that, if true, it related to another and different occasion, wherein appellee was not involved.

For some distance north of a point 47 feet north of

the north line of 12th street the tracks of appellant were located wholly in an alley, and going south from a point 115 feet north of the north line of 12th street and about 90 feet north of the station platform the tracks curved to the east, until they emerged from the alley to the private right of way of appellant. The total length of the south-bound station platform was 179.5 feet and the northerly 58.5 feet of said platform curved to the west, in correspondence, approximately, with the curve of the south-bound track. Necessarily, the platforms of south-bound cars which stopped at the curved portion of the station platform were farther removed from the station platform than the platforms of cars which stopped at points where the track and the platform were straight, and the distance between the car platform and the station platform at a point where the latter was curved was further increased by reason of the fact that the cars veered to the east on the curved track. The testimony shows that the distance between the car platforms and the station platform at points where the track was straight did not exceed one inch.

Whether or not appellant was negligent in so operating its trains that cars were stopped at its station platform at a point where there was an opening of 16 to 18 inches between said platform and the car platform, over which opening passengers were required to step in alighting from its cars, and whether or not appellant was negligent in failing to warn appellee through its guards or otherwise of the presence of such opening, and whether or not appellant was negligent in failing to have the place where the passengers were required to alight properly lighted, were all questions of fact properly submitted to the jury. This we say irrespective of the holding upon the former appeal, when substantially the same testimony was considered by the court, and which holding was in this case conclusive upon the trial court.

That a curve in the track, where the same was

then constructed, was necessary, and that the rear platform of a train consisting of five cars could not be stopped by appellant at its station platform to discharge and receive passengers without necessarily requiring an opening of from 16 to 18 inches between the platforms, have no relation to the charges of negligence with respect to appellant's failure to warn appellee of the danger, or its failure to properly light the platform and is not conclusive against appellee as to the negligence charged in the second count of the declaration, with respect to which appellant apparently assumes the position that it involves an insurmountable engineering problem. The alleged engineering problem would not exist if appellant had exercised its right of eminent domain or located its station a few feet further south, where it might have had a straight track and a straight platform, or had operated trains consisting of four cars, and required all passengers in the rear car to enter and alight by the front platform.

As tending to show that appellant was not guilty of negligence in permitting the opening in question to exist between the platform of the car and the station platform, great reliance is placed upon the admission by appellee, on tender of proof by appellant that during the period of five years next preceding November 11, 1905, when appellee was injured, there were 3,157,396, or a daily average of 1,729, paid fares at the Twelfth street station by persons boarding trains there; that observation showed that at each station twice as many persons passed through going both ways as paid fare; that during that period but four claims or reports had been made of injuries to passengers on the same platform at said station, all of which claims or reports related to injuries occasioned in attempting to board trains and none in alighting from trains. Such or like proof would be entitled to more consideration, if it was limited to the experience of

appellant in receiving and discharging passengers at the precise point on the platform where appellee attempted to alight when she was injured.

Whether or not appellee was in the exercise of due care for her own safety was also properly submitted to the jury, and we concur in what was said upon that subject in the opinion upon the former appeal.

We cannot say that the verdict of the jury upon the issues of appellant's negligence and appellee's due care is unwarranted.

The contention of appellant that the court improperly excluded certain evidence is without force. The evidence is in the record and was available to be considered by the jury. That objections to the admission of the evidence were sustained in the first instance and the evidence subsequently admitted, in one instance under stipulation, and in the other after counsel for appellee had withdrawn his objection to the question, did not detract from its probative value before the jury, but rather tended to give it added emphasis.

After the cross-examination of appellee had proceeded at considerable length, and before it was concluded, and while counsel for appellant were engaged in a short conference, appellee, while in the witness chair called for a drink of water, placed her arm upon the railing and placed her head upon her arm and began to cry. When a glass of water was brought to her, she raised her head, ceased crying and drank some of the water, and after handing the glass to the bailiff, again placed her head on her arm and began to cry and sob. She was assisted into a nearby room, and her husband, with the consent of counsel, was called from the witness room to attend her. The trial was suspended about twenty minutes, and appellee and her husband were left alone in the room where she had been taken. Upon the resumption of the trial, and while another witness was being examined, the husband of appellee opened the door of the room in which

his wife was, and within the hearing of the jury, called in a loud tone of voice, "Doctor, doctor, I want a doctor quick." The physicians present responded to the call and went into the room with appellee. The jury remained in their seats and the trial was suspended about five minutes.

It is insisted that this incident and the conduct of appellee and her husband operated to the prejudice of appellant and requires a reversal of the judgment. Counsel say the circumstances indicate that the conduct of appellee and her husband was not the spontaneous and involuntary workings of natural forces; that the incident required a continuance of the case and the selection of a new jury, but the trial was allowed to proceed without comment from the court, and without any instruction to the jury on the subject. If counsel apprehended that the incident would operate to the prejudice of appellant, they might with propriety have requested the withdrawal of a juror and a continuance of the case, or requested a proper instruction on the subject, but the record discloses that they wholly ignored the incident until they interposed their motion for a new trial. The consideration of a somewhat more aggravated incident was involved in Chicago & E. R. Co. v. Meech, 163 Ill. 305, and held not to be ground for reversal. We have arrived at the like conclusion in the case at bar.

The evidence bearing upon the character and extent of appellee's injuries tends to show that immediately following her fall and as a result thereof, she was confined to her bed for about two weeks; that she suffered a miscarriage; that she was weak, nervous and hysterical; that there was a bruised and discolored area, about two inches in length and half an inch in width, over the abdomen on the right near the illiac region; that her temperature was 99.8 and her pulse was much accelerated and irregular; that there were blood clots in the vagina and the womb was enlarged two or three times its normal size, and the walls were thickened and spongy; that there was a gradual and marked

improvement in these conditions; that she did not leave the house until Christmas, 1905; that in February following she moved with her husband to Indiana on a farm; that she was unable to remain on the farm and do housework and went to the home of her mother where she remained until May; that during that time she was in bed most of the time; that in May she returned to the farm, riding in a buggy thirty miles; that she remained on the farm until July, when she returned to her mother's home, where she remained until September; that she then moved to another farm where she remained until March, 1908; that she then moved to another farm where she remained a year; that she then moved to the village of Fair Oaks where she remained until February, 1910, when she moved to a farm near that village; that with the assistance of her husband she did the housework; that she occasionally milked the cows and hoed and weeded the garden; that on one occasion she rode on a cultivator; that since her injury she has had two normal child births, one on March 20, 1907, and one on March 18, 1909; that the children have survived and she has cared for them. There is also evidence strongly tending to show that while residing in Fair Oaks she occasionally attended and participated in dances.  At the time of her injury appellee was 23 years of age and weighed from 130 to 140 pounds.  She has since lost from 25 to 30 pounds, and continues to have headaches and is neurasthenic.

A careful examination and consideration of the evidence impels us to the conclusion that the damages awarded appellee are more than compensatory and are excessive.

If, within ten days, appellee will remit $3,000 from the judgment, the judgment will be affirmed for $4,000; otherwise the judgment will be reversed and the cause remanded.

*Affirmed if remittitur filed for $3,000; otherwise reversed and remanded.*