## Lake Villa Co-Operative Association, Appellant, v. Western Dairy Company, Appellee.

### Gen. No. 7,837.

1. CORPORATIONS—*party who asserted contract was ultra vires as estopped to claim contract is valid.* The occupant of a building under a contract to pay nominal rent and to purchase the building at the end of the term who avers, in its answer to a bill by the corporate owner for specific performance of the contract to purchase, that the contract was *ultra vires,* cannot insist, in action by the owner for use and occupation, that the owner was authorized to execute the contract.

2. LANDLORD AND TENANT—*rent for premises occupied under ultra vires contract.* The occupant of a building under a contract to pay nominal rent and to purchase the building at the end of the term who, on a bill by the corporate owner for specific performance of the contract to purchase, repudiates the contract as *ultra vires,* cannot claim in an

Lake Villa Co-Operative Ass'n v. Western Dairy Co., 247 Ill. App. 496.

action by the owner for use and occupancy that the contract is in force to the extent of fixing the amount of the rent as the nominal sum, and is liable on the basis of *quantum meruit.*

3. LANDLORD AND TENANT—*liability for use and occupation under breached contract.* One who occupies a building under a contract giving it the right to terminate the possession if a railroad company refuses to furnish cars, but who retains possession after a refusal of cars cannot refuse to pay for the use and occupancy because the cars were not furnished, although that fact may be considered in determining the rental value during the period cars were not furnished.

4. LIMITATIONS OF ACTIONS—*new cause of action after commencement.* A declaration for the use and occupancy of a building, which is filed upon the transfer to the common-law docket of a bill for the specific performance of a contract to purchase the building, states a different cause of action, and there can be no recovery back of five years prior to the filing of the declaration.

Appeal by plaintiff from the Circuit Court of Lake county; the Hon. ARTHUR E. FISHER, Judge, presiding. Heard in this court at the October term, 1927. Reversed and remanded. Opinion filed February 2, 1928.

HALL & HULSE and SIDNEY H. BLOCK, for appellant; ALBERT L. HALL and SIDNEY H. BLOCK, of counsel.

BARR, BARR & CORCORAN and FOLLETT & FOLLETT, for appellee; ALFRED E. BARR, ROY E. BARR and ROBERT E. CORCORAN, of counsel.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellant, an Illinois corporation, organized for the buying, selling and handling of milk, butter, cream, etc., on May 23, 1911, entered into a contract with appellee to erect, adjacent to the Soo Line railroad a building to be used and occupied by appellee as a milk depot and for the manufacture of by-products of milk, the cost thereof to be borne by appellant. Appellant was also to procure a lease at a nominal rental on the ground to be occupied by said building, for a term of not less than 30 years; the contract also provided that appellee should pay appellant an annual rental of $1 per year, "with the further consideration that the

498          APPELLATE COURTS OF ILLINOIS.

Lake Villa Co-Operative Ass'n v. Western Dairy Co., 247 Ill. App. 496.

said second party (appellee) shall use and occupy said building for dairy and milk shipping business and the manufacture of by-products of milk, for the term of five years''; that at the end of five years appellee was to purchase said building, etc., for the actual cost of construction including the cost of drainage and sewer facilities, etc., the amount of which cost would be submitted to appellee by a sworn statement at the time of the completion and delivery of said building; that appellee was to furnish said building with the necessary equipment for the business to be conducted by it.

It was further provided that ''if the sewerage and drainage facilities and connections shall be cut off and interfered with in any way, then and in that event second party (appellee) shall be under no further obligation to continue its occupation of the said building for any purpose whatever, and said lease shall at once be concluded and ended and second party may remove all its equipment from the building.'' It was further provided that in such event appellee should be under no obligation to purchase.

It was further agreed that appellee should pay ''Borden prices'' for the milk purchased at its plant; that appellant should build or cause to be built ''in a proper and suitable location by the Minneapolis, St. Paul & Sault Ste. Marie Railway Company, without cost or charge to the Western Dairy Company, a switch track connecting the main line of said railway company, suitable and of sufficient size and length to accommodate not less than three freight cars at one time, on which switch track said railway company will set for said Western Dairy Company, without charge, such freight cars for milk hauling or coal hauling, and said Western Dairy Company may unload such freight car or coal car at its convenience,'' etc.; ''that should said switch track not be built or should said railroad refuse or neglect to furnish and haul such cars for and furnish such privileges to the Western Dairy Company, that

then this contract, at the option of the Western Dairy Company, shall at once become terminated.''

Said building was constructed and appellee took possession of the same on October 1, 1911, and remained in possession thereof up to November 26, 1916. The switch track was constructed, but some time during the year 1913, the railroad company refused to furnish car service for the alleged reason that the business did not warrant it. On October 17, 1916, appellee wrote to the secretary of appellant the following letter:

''Inasmuch as we have been denied switching privileges, we desire to notify you that we hereby terminate our contract with the association for the purchase of such property, according to its terms.''

On November 23, 1916, appellant filed a bill against appellee in the circuit court of Lake county, alleging, among other things, the execution of said contract, the construction of said building, the taking possession and occupation thereof by appellee, and that the cost of said construction, sewer facilities, etc., was $5,371.40; that said 5-year term expired October 1, 1916, and that appellee had failed to purchase said premises according to the provisions of said contract, praying a decree for specific performance.

An answer was filed to said bill as amended and the cause was referred to a special master to take and report the evidence, together with his conclusions of law and fact.

On February 1, 1919, by leave of court, appellee amended its answer as follows:

''This defendant states that on February 28, 1911, complainant was duly organized and incorporated under and by virtue of the laws of the State of Illinois; that the sole and only object for which complainant was incorporated was the buying, selling and hauling of milk, butter, cream and by-products; * * * that the complainant had no power or authority to undertake, make, execute or enter into the alleged contract

which the complainant herein is seeking the aid of this court to enforce, and that the making and executing of said alleged contract was *ultra vires* and beyond the corporate powers and authority of the complainant, and that the complainant at the time of the certain transaction with this defendant acted beyond the scope of its corporate powers and authority.''

On March 17, 1920, after a considerable amount of testimony had been taken and after said cause had been argued before the master, but before any report had been made, on the motion of appellant, the court transferred said cause to the common-law docket, stating in its order that ''it finds the complainant has misconceived its remedy, and should be permitted to have said cause transferred from the chancery side to the law side of the court in accordance with section 40 of chapter 110 of the Revised Statutes.''

Appellant thereupon filed its declaration consisting of three counts, the first and· second counts being *indebitatus* counts for use and occupancy of said premises, the third count being the consolidated common counts.

To said declaration appellee filed three pleas. The first plea sets forth the contract entered into between appellee and appellant, denies that the premises in question were held without a contract with reference to the rent to be paid therefor, and avers that appellee was to pay appellant as rental for said premises $1 per year. The second plea avers that appellant had, prior thereto, filed a bill on the chancery side of the court, praying specific performance of the contract in question. The third plea was a plea of the statute of limitations.

To the first plea appellant replied, among other things, ''that the agreement set forth in said first plea of defendant, which alleged agreement is dated May 23,. 1911, was *ultra vires* and void.'' By leave of court, a second replication was filed to said first plea, that ''on

the 1st day of February, 1919, the defendant Western Dairy Company, a corporation, in said proceeding, filed an amendment to said answer heretofore filed in said cause, in and by which answer it·contended that the agreement now set forth in defendant's first plea herein was *ultra vires* and void," praying judgment "if the said defendant ought to be admitted or received, against the said record, to plead that the said writing obligatory is valid and subsisting." Appellant filed a demurrer to the second plea and replied to the third plea, that the matters sued for accrued within five years next after the commencement of said suit.

Thereafter, by leave of court, appellee filed a plea of *nul tiel* corporation, and rejoinders to the replications to the first and second pleas of defendant, and a *similiter* to the replication to the third plea.

A jury was waived and a trial was˙had resulting in a finding and judgment in favor of appellant for the sum of $2. To reverse said judgment, this appeal is prosecuted.

Eight propositions of law were submitted by appellant, all of which were refused. Four propositions were submitted by appellee, all of which were held by the court. It will not be necessary for us to discuss the rulings of the court on said propositions, as what we have to say with reference to the rights of the parties herein will sufficiently dispose of the same.

It is contended on the part of counsel·for appellant that appellee, having failed to carry out the provisions of said contract and having averred that appellant, under its articles of incorporation, was not authorized to enter into the contract in question and that the same was *ultra vires;* that appellant, having accepted appellee's position in reference to the validity of said contract and abandoned its bill for specific performance, now has the right to maintain its suit for use and occupancy under Cahill's St. ch. 80, ¶ 1, for the reasonable and customary rental value of said premises, for the

period from October 1, 1911, to October 1, 1916, and that appellee is now estopped to claim said contract to be valid and binding.

As against this proposition, appellee insists that it occupied said premises under the above-mentioned contract, in and by which it was to pay $1 per year as rental for five years, and that it is not estopped, by its unsworn answer, from claiming said contract to be valid.

Appellee having averred in its answer that the contract in question was *ultra vires* appellant corporation, it is not now in a position to insist that appellant was authorized to execute said contract.    10 R. C. L. pp. 699–700–701; *Schuyler County v. Missouri Bridge & Iron Co.*, 256 Ill. 348–352; *Gibson v. Brown*, 214 Ill. 330–341; *Jackson v. Browning, King & Co.*, 202 Ill. App. 197–198; *Mahle v. Mahle*, 211 Ill. App. 622–623.

Counsel for appellee also insists that, even though said contract be held to be *ultra vires*, appellant having constructed said building under the same and appellee having taken possession of and occupied said premises under said contract, it would still be in force to the extent of fixing the amount of rent to be paid therefor.

Certain authorities tend to support appellee's theory, with reference to the amount of rent to be paid under a voidable contract.    Those cases would not apply here, as the rental specified in said agreement was merely nominal.    The provision to pay said nominal rental is to be construed along with the contract of appellee to purchase said premises.    If appellee saw fit to occupy said premises up to the time it was to purchase the same without doing so, and takes the position that the contract is *ultra vires* and unenforceable, it is not in a position to insist that it could only be required to pay said nominal rental.    In that event appellant would be allowed to recover for the use and occupancy of said premises on the basis of *quantum*

*meruit.  Warner v. Hale,* 65 Ill. 395; *Marr v. Ray,* 151 Ill. 340; *Matousek v. Quirici,* 195 Ill. App. 391.

"It is well settled that where one party repudiates the contract and refuses longer to be bound by it, the injured party  *  *  *  may treat the contract as rescinded, and recover upon *quantum meruit.*" *Lake Shore & M. S. Ry. Co. v. Richards,* 152 Ill. 59–80.

Appellee further insists that said provision for the payment of rent was a "technical consideration only; the actual consideration from appellee was that it should equip, use and occupy the premises as a milk shipping plant, and buy milk offered it."

It is true that, as a part of the consideration for said contract, appellee was to conduct the milk business provided for in said contract. It was also to purchase said premises. Appellee had the right under its contract, for the reasons specified therein, to terminate the same and to remove the fixtures installed by it. Appellant is entitled to recover for the use and occupation of said building, not taking into account the fixtures furnished and installed by appellee.

Appellee gave notice that it was terminating the contract and was electing not to purchase the premises, for the reason that the railroad company had refused to furnish cars, etc. The railroad ceased furnishing the cars in 1913, while appellee retained possession of said property and conducted its business therein up until November 26, 1916. Appellee is therefore not in a position to refuse to pay for the use and occupancy of said premises on the ground that the railroad company had refused to furnish said cars. That fact might be taken into consideration in determining the rental value of said premises during the period said cars were not furnished.

It is next contended by counsel for appellee that in any event appellant cannot recover for more than five years preceding the date of the filing of appellant's declaration. On the other hand, counsel for appellant

insist that the bill for specific performance having been filed within five years from the accrual of the rent for the full term, the transferring of said cause to the common-law side of the docket would not bar a recovery of any of the rent in question.

There would be no right of recovery back of five years prior to the filing of said declaration. Said declaration stated a different cause of action from that set forth in the bill for specific performance. The bill for specific performance purported to be based on a valid contract, whereas the suit for use and occupancy is not on a contract, but is based on the statute, section one of chapter 80, Cahill's Statutes. The evidence to support this declaration would be entirely different from evidence necessary to support the bill for specific performance. It was therefore a new cause of action. Cahill's St. ch. 83, ¶ 16; *Haldeman v. Schuh,* 109 Ill. App. 259; *Lakin v. South Side El. R. Co.,* 178 Ill. App. 176; *Eylenfeldt v. Illinois Steel Co.,* 165 Ill. 185; *Doyle v. City of Sycamore,* 193 Ill. 501; *South Chicago City R. Co. v. Kinnare,* 216 Ill. 451, aff'g 117 Ill. App. 1; *Maegerlein v. City of Chicago,* 237 Ill. 159, aff'g 141 Ill. App. 414; *Carlin v. City of Chicago,* 262 Ill. 564; *Milauskis v. Terminal R. Ass'n of St. Louis,* 286 Ill. 547, aff'g 211 Ill. App. 120.

For the reasons above set forth, the judgment of the trial court will be reversed and the cause will be remanded.

*Reversed and remanded.*