## THE WABASH RAILROAD COMPANY

### *v.*

## PETER H. BHYMER.

*Opinion filed February 21, 1905—Rehearing denied April 17, 1905.*

1. PLEADING—*one test for determining whether different counts state same cause of action.* One of the tests by which it is determined whether different counts state the same cause of action or different causes of action is whether the same evidence will support the different counts.

2. SAME—*when counts state different causes of action.* A count charging negligence in failing to warn plaintiff that the rails on the track had become displaced by the wrecking of a preceding train, alleges a different cause of action from that set up in another count charging negligence in failing to notify plaintiff, before the preceding train was wrecked, that it was in trouble and must be stopped.

3. FELLOW-SERVANTS—*relation of freight crews whose trains are following each other.* The fireman upon the second engine of a "double-header" freight train is not, as a question of law, the fellow-servant of the crew of a coal train which such "double-header" is closely following and from the negligent wrecking of which upon the track such fireman was injured, and it is not error for the trial court to refuse to withdraw the case from the jury on that ground. (CARTWRIGHT and HAND, JJ., not concurring on question of fellow-servants.)

WILKIN and MAGRUDER, JJ., dissenting.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

C. N. TRAVOUS, for appellant.

SETH F. CREWS, and RALPH CREWS, for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

Appellee recovered a judgment in the superior court of Cook county against the appellant for $8000 for personal injuries received by appellee while employed as a fireman on

one of appellant's freight trains. The Appellate Court affirmed that judgment, and the present appeal is prosecuted from the judgment of affirmance.

A brief statement of the facts will lead to a better understanding of the matters herein passed upon:

Early in the morning of December 9, 1899, a freight train known as No. 3-64, north-bound, left Marley, a station on appellant's road, ten or twelve minutes ahead of another freight train bound in the same direction, known as No. 94. The latter train was a double-header, pulled by two engines coupled together at the head of the train. Appellee was the fireman upon the second of said engines. His train, No. 94, consisted of twenty-eight loaded cars. It was a train of the first class with respect to rights, while train No. 3-64 was carrying coal and was of the third class, and consisted of twenty cars. At Marley a hot-box was discovered on train No. 3-64, about nine cars forward of the caboose. The box was cooled off and re-packed and a bag filled with water placed upon it so as to have a continual dropping of water on the journal. This was the usual method for remedying the defect caused by hot-boxes. Marley is thirty miles from Chicago, and the trains in question were running upon the Chicago branch of appellant's road. After cooling the box the train proceeded and reached Orland, a station seven miles north of Marley, where the conductor gave to the engineer the "go-ahead" signal. Just after passing Orland the box was found to be again hot, and the conductor and rear brakeman began signaling the engineer to stop by swinging their lanterns from the sides of the caboose, and this was kept up until the train came within a mile of Worth, a station in Cook county five and one-half miles from Orland, at which point the fireman on train No. 3-64 observed the signals and informed the engineer. It was the duty of the engineer to look out for signals. When the engineer was informed of the signals he applied the brakes, but as the train was running at the rate of sixty miles an hour, before it could be

stopped the heat caused the journal to twist off and drop to the ground, wrecking the cars and tearing up the track. The latter nine cars went into a ditch. The caboose was turned over and the lights extinguished. Train No. 94 was following in the rear of the wrecked train and was about twenty-five minutes behind time. The evidence tends to show that there were fusees in the caboose of train No. 3-64, which might have been lighted and thrown out for the purpose of warning No. 94 of danger, but they seem to have been forgotten. A fusee is an extra danger signal which makes a strong red light and can be seen at least a mile. As soon as the caboose of No. 3-64 was turned over the conductor and brakeman got out of it and the conductor took a torpedo with him and started back to signal No. 94 to stop. On his way he took a switch light from a stub-switch a short distance from Palos Springs, placed a torpedo on the track and with the lantern signaled the oncoming train (No. 94) to stop. As the train reached him he threw his lantern at the cab of the front engine, but the lantern passed over it and lodged upon the second engine between the guides on the water-drum, where it was afterwards found. The view of the fireman on the first engine of No. 94 was somewhat obstructed by the head-brakeman, who had entered the engine and was sitting in the seat-box on the engine. No one on No. 94 seems to have seen the light of the signal, but when the engine struck the torpedo and it exploded the brakes were applied. Train No. 94 was running down-grade at a high rate of speed, and before it could be stopped reached the point where the rails were broken and displaced, and it was ditched and appellee injured. Prior to the wrecking of the first train the track was in good and safe condition and the road-bed well ballasted.

The declaration, as finally amended, contained five counts, —the original and four additional counts. The first count, filed September 21, 1900, charged that appellee was an employee of appellant, in the line of his duty, on a certain engine

drawing a freight train in the night time; that it was dark, and it was defendant's duty to have and keep its track in safe condition for travel by trains; that defendant negligently caused and permitted the track and certain rail or rails to become detached and loosened and displaced; that defendant had notice; that plaintiff was exercising due care; that in consequence thereof the locomotive left the track and plaintiff was injured.

November 30, 1901, appellee filed two additional counts. The first alleged the relation, time and employment and the duty of defendant to keep the track safe for travel; that a certain other locomotive and train had prior thereto become wrecked and were lying opposite the track, and had thereby detached, loosened and displaced certain rails; that defendant knew plaintiff was upon the train riding toward said point, and it was its duty to warn plaintiff of such displacement but it failed to do so, in consequence of which the locomotive carrying plaintiff left the track and plaintiff was injured. The second additional count alleged the relation of the parties, and that defendant was operating two trains, with certain engines, between Palos Springs and Worth; that plaintiff was upon an engine drawing one of said trains in the night, and that it was the duty of defendant to keep its track in safe condition; that defendant negligently caused, suffered and permitted a certain other locomotive and train to become wrecked and the rails loosened and displaced, and that because of such negligence of defendant the locomotive upon which plaintiff was riding left the track where the rails were displaced, and plaintiff was injured.

On March 27, 1902, after the trial had proceeded to the close of all the evidence and more than two years after the bringing of the suit, the appellee filed two more (the third and fourth) additional counts to his declaration. The third charged that the defendant owned the railroad and was operating and running certain engines and cars over the same towards the town of Worth; that plaintiff was defendant's

servant and upon an engine drawing a train along said track
in the night time, and that it was defendant's duty to keep its
track safe for travel; that defendant "negligently so operated
the certain other train in such a way and manner as to per-
mit and cause said certain other locomotive and train of cars
to be wrecked upon and along said track there," and thereby
detached, loosened and displaced certain rail or rails from
the ties, and that because of such negligence of defendant,
and without want of care of the plaintiff, the locomotive on
which plaintiff was, left the track where the rails were dis-
placed and ran into a ditch, etc. The fourth additional count
charged that defendant was a corporation and possessed of
a railway; that plaintiff was in defendant's employ as its
servant, and as such and in the performance of his duty
was upon a certain engine, for defendant, drawing a train
of freight cars over its line in the night; that it was defend-
ant's duty to have and keep its track reasonably safe for
travel; that a certain other locomotive engine, and train of
cars attached, were being drawn along said track in the same
direction but some distance in front of plaintiff's train, and
said train was preceding the one on which plaintiff was rid-
ing, and "was so operated and conducted that it became nec-
essary then and there to stop the same, and certain agents of
defendant upon said train thereupon immediately endeav-
ored, by the giving of signals, to stop said train, which sig-
nals were not obeyed and said train failed to stop, and it
thereupon became defendant's duty to warn plaintiff, who
defendant well knew was riding on its train, as aforesaid,
toward the point where said efforts were being made to stop
said train as aforesaid, yet defendant negligently failed to
warn plaintiff of the fact that said train must be stopped,"
and said defendant, by its servants, then and there failed to
properly stop said train, and by such failure the same then
and there became wrecked and the track torn up and the rails
displaced, and by reason of such failure to give such signals,
as aforesaid, caused and suffered plaintiff, who, in the exer-

cise of due care as a servant of defendant, was engaged in the performance of his duty in the management and operation of said locomotive and train, to be carried upon the same to and upon the place where said rails had become and were displaced, and because of such negligence the locomotive left the track, etc.

To the third and fourth additional counts the plea of the Statute of Limitations was interposed by appellant and demurred to by appellee and the demurrer sustained. The appellant elected to abide its plea, and the court ordered the general issue to stand as to all the counts, and the cause was submitted to the jury with the result above mentioned.

The specific negligence alleged in the first count and first additional count is the failure of appellant to warn appellee that the rails were displaced. The second and third additional counts allege the specific acts of negligence as negligently suffering and permitting the first train to become wrecked and the track displaced. Want of notice to appellee is not charged in these counts. The fourth additional count alleges the negligence to be the failure of appellant to warn appellee "of the fact that such train [meaning the first train] must be stopped," and no other negligence is relied on in that count as the ground of recovery. That this is so is made certain by the following allegation in the plea: "And by reason of such failure to give such signals, as aforesaid, caused and suffered plaintiff, who, in the exercise of due care as a servant of defendant, was engaged in the performance of his duty in the management and operation of said locomotive and train, to be carried upon the same to and upon the place where said rails had become and were displaced." No signals or any place mentioned are pointed out in the plea, other than the signals from the agents upon the first train to the engineer in charge of that train, which, it is alleged, were not obeyed. There is no allegation in that count of any duty from it to give, or a failure to give, appellee any signals except to warn him "of the fact that said (first) train must

be stopped." The reference in the latter part of the plea by the words used, namely, "by reason of the failure to give such signals, as aforesaid," also confirms this view. The words "as aforesaid" must be held to refer to signals previously mentioned in the plea.

Was, then, the negligence charged in the fourth additional count the same as that charged in the first or original count, or the same as charged in the first or second additional count? In other words, is the charge of a failure to warn plaintiff that a certain rail or rails in the track is or are displaced the same as that a train ahead of him must be stopped? According to the allegations of the fourth additional count appellee's engine did not run into the train that was ahead of him before or after it was stopped. Appellee's train did run off the track and into a ditch by reason of the displacement of a rail by the train that he alleges ought to have been stopped and alleges he ought to have been notified that it "must be stopped." He alleges the train that "must be stopped" was wrecked because those in charge of it would not obey signals and that it displaced the rails, but does not allege he had no notice of the displacement of the rails or that he was entitled to any notice or that appellant had any notice thereof. The notice that he claims he was entitled to, under that count, was not that the train was wrecked or that the track was displaced, nor was it that the train was stopped, but that it was necessary to stop it, and that certain agents of appellant on the said train were trying to give or were giving signals to the engineer thereof to stop and that they were not obeyed, and that appellee was entitled to be warned that "efforts were being made to stop said train." This was all before the train ahead of appellee was wrecked and before the rails on the track were displaced, if the train ahead caused the displacement, as alleged. The counts relate to two different periods of time and to different chains of circumstances. The first count relates to circumstances and charges of duty before the wrecking of the first train, involving the discovery

of the hot-box at Marley, the packing and cooling of it, the discovery that it was again hot as the train passed Orland, the efforts of the conductor and rear brakeman to signal the engineer to stop and the latter's failure to see or heed the signals, and the failure of appellant's servants in charge of the first train, by throwing out fusees from the running train, to warn appellee that the first train "must be stopped." The second point of time covered by the counts filed within the two years begins with the wreck, and includes the displacement of the rails, the efforts of those in charge of the first train, by the use of the torpedo and lantern, to warn those in charge of appellee's train that the rails were displaced, and the efforts used by those in charge of appellee's train to comply after receiving the warning, and the injury.

One of the tests by which it is determined whether different counts constitute the same cause of action or different causes of action is whether the same evidence will support the different counts. (*Liese* v. *Meyer,* 143 Mo. 547; *Buntin* v. *Chicago, Rock Island and Pacific Railway Co.* 41 Fed. Rep. 744.) "The cause of action may be regarded as the act or thing done or omitted to be done by one which confers the right upon another to sue,—in other words, the act or wrong of the defendant towards the plaintiff which causes a grievance for which the law gives a remedy." *Buntin* v. *Chicago, Rock Island and Pacific Railway Co. supra.*

Applying the evidence test to the case before us, and we are forced to the conclusion that appellant's failure to warn appellee that the first train must be stopped, which is the act charged as omitted to be done by appellant upon which appellee relies and to which he attributes his injury, as alleged in the fourth additional count, would neither be admissible nor tend to support the charge that appellant failed to warn appellee of the displacement of the rail, in the counts filed prior to the running of the statute. Or, applying the test that appellee contends for, whether a judgment on one could be pleaded in bar to a subsequent suit upon the other, and

bearing in mind that the former verdict is conclusive only as to facts directly and distinctly put in issue and the finding of which is necessary to uphold the judgment, and that the rule does not extend to facts which may be in controversy but which rest in evidence and are merely collateral, (Freeman on Judgments, sec. 257,) and it must be apparent that the cause of action stated in the fourth additional count, that appellant failed to warn appellee that the first train must be stopped, is not and could not be directly put in issue under any averment in either of the other counts, and that if admitted at all it would be merely collateral matter resting wholly in the evidence and could not be relied on as a bar to an action based on the other causes named.

We think the cases of *Swift & Co.* v. *Madden,* 165 Ill. 41, *Swift & Co.* v. *Foster,* 163 id. 50, and *North Chicago Rolling Mill Co.* v. *Monka,* 107 id. 340, clearly distinguishable from the case at bar, as in each of them the same act or wrong is described but described in different ways, and that those cases do not conflict with our view concerning the pleadings in this case.

The case of *Chicago City Railway Co.* v. *McMeen,* 206 Ill. 108, is also cited. It is not in point. In that case the amendment was in matter of description of the *locus in quo.* The original description laid it in Cook county, and also on "State street," in Chicago. By the amendment "Cottage Grove avenue" was substituted, and we held that such minuteness was not necessary; that the count would have been good had it merely said the accident occurred in Cook county; that the allegation was not material or of the substance of the charge, and that the amendment did not state a new cause of action. In the case at bar appellee charges that the engine in which he was, was ditched because he was not warned that the train ahead of him "must be stopped." This was clearly matter of substance and not of description. From the record it is evident that the jury so regarded it. The jury were asked to find specially if the defendant was negligent, and

answered in the affirmative. They were also asked in what the negligence consisted, and answered, "By running train with a hot-box at the highest speed, and in disregarding signals, and in failure to use signals at hand." These findings were responsive only to the fourth additional count, and the last element, "failure to use signals at hand," referred to fusees carried in the caboose of the first train, which, it is claimed, might have been thrown from it while running, to warn appellee that the first train was in trouble, and, as appellee says in his *narr.*, that it "must be stopped."

The demurrer to the plea of the Statute of Limitations should have been overruled.

Appellant urges that the court should have directed a verdict for it as requested at the close of all the evidence, as, it insists, the evidence shows appellee was injured through the negligence of fellow-servants, and that his injuries were due to risks ordinarily incident to the business in which he was engaged and which risks were assumed by him. We regard these questions, under the circumstances shown by the evidence in this case, proper for the consideration and determination of the jury, and think the instructions fairly submitted them. As the case may be again tried we refrain from a discussion of the evidence.

The judgments of the superior and Appellate Courts are reversed, and the cause will be remanded to the superior court for further proceedings not inconsistent with these views.                              *Reversed and remanded.*

HAND and CARTWRIGHT, JJ., specially concurring:

We agree to the conclusion reached in the foregoing opinion, but think the relation of fellow-servants existed between the crews operating said trains, and for that reason there can be no recovery.

WILKIN and MAGRUDER, JJ., dissenting.