EMIL GERMANUS, ADMINISTRATOR OF MICHAEL MARCINCSAK, DEFENDANT IN ERROR, v. LEHIGH VALLEY RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued November 26, 1906—Decided June 21, 1907.

1. Plaintiff's intestate was one of a gang of men employed by the defendant company on its tracks tamping ties. The evidence at the close of plaintiff's case proved a custom that the men should be warned by the boss or foreman of the approach of a train, and that the plaintiff's intestate was run down and killed because of the failure of the foreman to give such warning. *Held,* that upon such uncontradicted proof a motion to nonsuit was rightfully denied. The decedent had the right to rely upon such warning being given in case there was any danger from approaching trains.

2. Where the custom of giving a warning by the foreman is proved, it is embraced in the duty owed by the master to the servants, and for the failure of the foreman properly to discharge that duty the master is responsible.

3. Where unusual conditions are shown to exist, such as the passing of noisy freight trains, which may interfere with the servants hearing the customary warning or signals, it was properly left to the jury to say whether, under such unusual conditions, the customary warnings were sufficient.

In tort. On error to the Supreme Court.

This case was tried at the Essex Circuit before Chief Justice Gummere and a jury, and a verdict rendered for the plaintiff below.

For the plaintiff in error, *McCarter & English.*

For the defendant in error, *Thomas L. Raymond.*

The opinion of the court was delivered by

VROOM, J. The plaintiff's intestate was one of a gang of laborers in the employ of the defendant company. They were working on the day of the accident on the main line of the defendant's railroad between Elizabeth and Roselle, and were engaged, under the direction of one Kutora, as foreman, in tamping ties. The track at that point to the west is directly straight for over a mile.

The plaintiff's intestate was working on the eastbound track, facing Elizabeth, with his back toward the direction from which trains would come. He was killed by being run down by a special engine running on the said eastbound track, and when he was struck was bending forward, working with his pick. The men constituting the gang were strung out in a line on the said track; the deceased was working standing with his back to the approaching engine and was the third in the line, the foreman, Kutora, was some eight or nine steps from him. About the time of the accident a long, empty and noisy freight train was passing on the westbound track, alongside of the place where the men worked.

The engine which ran down and killed plaintiff's intestate was in use by the officials of the road on a tour of inspection, and was returning from such a trip, and had on board certain officers of the company. It was claimed by the engineer that the bell was rung and the whistle blown from Roselle until the deceased was struck. The testimony, on the part of the plaintiff, was that no signals were given of the approach of the engine. According to the evidence of the plaintiff's witnesses it was the custom of the foreman to call out to the men to look out on the approach of trains, and even to push them away if they didn't move in time, but that on this occasion no warning at all was given by the foreman. The foreman, Kutora, testified that he had given two warnings, and was corroborated by one of the gang of men.

At the close of the plaintiff's case a motion was made for a nonsuit, which was denied by the learned trial justice, and this refusal forms the basis for the first error assigned. The ground urged in support of the motion was "that the place where the plaintiff's intestate was working was one of obvious danger, and that he can only escape from the liability that comes from occupying such a position in a suit against the master upon substantial proof of the existence of a custom on the part of the company to notify the employes so situated as the decedent in this case was, of the approach of a train, and that there is no proof of the custom of giving warning by the boss or foreman."

I think the motion to nonsuit was properly denied. As the case stood when the case for the plaintiff was closed there was proof uncontradicted that it was the custom of the company, by its foreman, to warn men working on the tracks, as this gang were, of the approach of trains, and that in this particular instance the warning was not given. The deceased had the right to rely upon such a warning being given in case there was any danger from approaching trains. *D'Agostino* v. *Pennsylvania Railroad Co.*, 43 *Vroom* 358. It was correctly held in that case that where a workman, in the discharge of his duty, has placed himself in a position of probable danger, and where he has a right to expect a warning

before the danger becomes actual, and he is injured because no warning is given, the question whether he assumed the risk or was guilty of contributory negligence cannot be decided by the court. *Albanese* v. *Central Railroad Co.,* 41 *Id.* 241; *Herman* v. *Reed Apartment Co.,* 39 *Id.* 332.

This case is distinguished from the recent decision of this court in *Precodnick* v. *Lehigh Valley Railroad Co., ante p.* 566. There the necessity of the giving warning to the men while working together as a gang, under the custom or system proved, was held part of the duty owed by the company to them; but it appeared that the deceased, in that case, was working at a distance from the gang, and the custom was clearly shown that when so sent out by himself it was incumbent upon the workman to look out for his own safety. The distinction clearly being that in the case now under consideration he had the right to expect a warning, while in the Precodnick case he had not such a right, by reason of the system under which he was working.

It was further sought to sustain the motion for a nonsuit upon the ground that the foreman, Kutora, was a fellow-servant with the plaintiff's intestate. While this point was not included in, or strictly raised by, the motion for nonsuit, yet it was clearly present in the mind of the trial judge. He said, in denying the motion: "As I understand the rule laid down by our cases, Kutora was not acting as a fellow-servant of the deceased, but was the representative of the master, performing the master's work, and for his failure the master is responsible. His failure is not in that regard the failure of a fellow-workman." The rule laid down in this court, in *Bellville Stone Co.* v. *Mooney,* 32 *Vroom* 253, controlling this question, is too well settled to call for any further discussion. In that case Mr. Justice Dixon said, "that the giving of warning was embraced in the duty owed by an employer to his employes that the place where he sets them to work shall be kept safe; that the failure of the foreman to perform his duty carefully was imputable to the employer; that such failure was not one of those obvious dangers of

which the employe assumed the risk." *D'Agostino* v. *Pennsylvania Railroad Co., supra.*

The other assignments of error were based upon exceptions taken to the charge of the trial judge, the second, third and seventh exceptions were argued together. They were as follows: (2) "All that the defendant was obliged to do was to use reasonable care to see that customary warning was given of an approaching engine. If the jury believe that the noise of a passing freight train on the westbound track interfered with the plaintiff hearing such signals or warning, the plaintiff cannot recover." (3) "Any increased danger arising from the presence of a noisy freight train and the consequent difficulty in hearing the signals or warning of an approaching engine was a risk assumed by the decedent. The railroad company was not bound to increase or change its customary call or warning by reason of the accidental presence of a freight train making a noise on the westbound track." (7) "For any difficulty in hearing the warning of the foreman, if any were given, arising from the fact that a train of empty coal and freight cars was passing by, the company was in nowise responsible."

It was insisted upon the part of the plaintiff in error that these requests raised the question whether the passing of the freight train and its attendant noise fastened an additional burden on the defendant to bring home its warning to the workman; or did it impose an additional duty on the decedent to be on his guard in the presence of the increased danger?

These requests the trial judge declined to charge, and very properly said it was for the jury to say whether the customary warning was enough under the unusual conditions which existed. In his charge, after referring to the fact that the giving of a warning is embraced in the duty owed by the employer to the employe, he said: "If you find that this signal was not given by Kutora in a way to warn these workmen soon enough to enable them safely to escape, then there is another question which you must determine adversely to the railroad company before you can fasten the responsibility

upon them, and that is this: was the blowing of the whistle of this train and the ringing of this bell continuously a discharge of the duty which this railroad company owed to this decedent? That is, to use reasonable care for his protection while he was at work on that track. Now it would seem to me that, ordinarily, nothing could be more effective to warn a man working upon a railroad track of the fact that a train was approaching than by the continuous blowing of the whistle on the engine. It is for you to say whether that is a full performance of the company's duty under all conditions. Were the surroundings such that the blowing of the whistle could not be heard by these men, notwithstanding the continuity of its blowing? The testimony is that they all kept on at work on this track until the engine was close upon them. Did the freight train, which was passing at the time, drown the noise of the whistle until the engine was close upon these men? If it did, then that warning was not effective. The fact that it was not effective is not conclusive negligence on the part of the railroad company. Ought they to have anticipated that, under the conditions existing at that time and place, that warning would not be one which would be heard by these men?"

The subject of the warnings was thus fairly placed before the jury, and there was no error in leaving it to their determination.

The other assignments of error relied upon by the plaintiff in error were based upon the fourth and fifth requests to charge.

The fourth request was "that if the company gave warning or signal of the approaching engine, and the decedent hesitated or delayed obeying and thereby was killed, there can be no recovery." To have charged this request would have amounted to a determination, as a matter of law, that any hesitation or delay in obeying amounted to contributory negligence and would have defeated the action, and was properly refused. The question of contributory negligence was correctly submitted to the jury, the trial judge in his charge saying: "If you say that the warning was given in such a

way that he must have heard it; if he had been paying the attention which he, as a prudent man, is required to pay, working in a place of danger and knowing the system which is adopted for his safety, then the railroad company is in no default in the performance of the duty which it owed to him of taking reasonable care for his safety, then the plaintiff could not recover."

The fifth request was as follows: "No duty was cast upon the defendant to pull the decedent off the track, nor was the defendant bound to have a foreman near enough to every workman as that his warning should be heard by each, in addition to giving the customary warning by bell or whistle, or both."

The trial judge declined to charge this request, saying that it had injected into it a statement not warranted by the proof, that is, that the warning customarily given to laborers on the track of an approaching engine or train was by whistle or bell, and that there was no proof that any such signal had ever been given before. And when it is considered that the evidence tended to show that the warning by the boss or foreman was the customary warning, it cannot be said, as a proposition of law, that the company did not owe the duty to this man to have the foreman near enough to the workmen so that his warning could be heard by each.

I find no error in the record, and the judgment brought up should be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 14.

*For reversal*—None.