ELIZABETH SWANK, ADMINISTRATRIX OF HERBERT L. SWANK, DECEASED, RESPONDENT, v. PENNSYLVANIA RAILROAD COMPANY, APPELLANT.

Argued March 5, 1920—Decided June 14, 1920.

1. An employe of a railroad company was engaged in removing stone ballast from between the ties of main-line railroad tracks used in interstate commerce preparatory to running a pipe line under them to operate the switch point of a new switch, the rails of which had just been laid between such main-line tracks and a siding used in connection therewith and running along side thereof on the same general roadbed, and also used for inter-state purposes, but which switch had not yet been used nor its controlling device completely installed, and while thus engaged such employe was killed by a train which had been shifted from one of the main-line tracks to the one on which he was working. *Held*, that such employe was engaged in interstate commerce under the provisions of the Federal Employers' Liability act. *U. S. Comp. Stat.* 1916, §§ 8657, 8665.

2. The test in such cases is always whether the particular work upon which the employe was engaged at the very time of the ac-cident was a part of the interstate commerce in which the car-rier was engaged.

3. Where the custom of giving a warning by the foreman is proved, it is embraced in the duty owed by the master to the servants, and for the failure of the foreman properly to discharge that duty the master is responsible.

4. The common law doctrine of assumption of risk arising solely and directly out of the negligent act of fellow-servants has been abolished by the Federal Employers' Liability act.

5. There being proof in the case of what the deceased employe's wages were at the time of the accident which resulted in his death; that he had no property or other income; that he and his wife lived together solely on what he earned, it was competent to prove what the employer was paying at the time of trial to employes engaged in exactly the same line of work as that in which decedent had been engaged.

6. An amendment to the complaint made at the close of the trial, and more than two years after the cause of action arose. that time being the limitation for bringing the action prescribed by statute, is permissible where it merely expands or amplifies what was alleged in the cause of action already asserted, for it relates back to the commencement of the action and is not affected by the intervening lapse of time.

7. The act of March 27th, 1917 (*Pamph. L., p.* 531), supplemental of the Death act, requiring an action instituted under and by virtue thereof to be in the name of an administrator *ad prosequendum*, does not apply to an action under the Federal Employers' Liability act (*U. S. Comp. Stat.* 1916, §§ 8657, 8665), declaring that the liability of a carrier for the death of an employe is to his personal representative, meaning his executor or general administrator.

On appeal from the Supreme Court.

For the appellant, *Bourgeois & Coulomb.*

For the respondent, *James Mercer Davis.*

The opinion of the court was delivered by

ACKERSON, J. Plaintiff's intestate was employed by defendant railroad company as a laborer in one of its section gangs, and at the time of the accident complained of he was working with this gang, which was in charge of a foreman, along defendant's tracks near Princeton Junction. Defendant's roadbed, at that time and place, consisted of four parallel main-line tracks, designated as Nos. 1, 2, 3 and 4, and a side track known as No. 5, running alongside of track No. 4 from Princeton Junction to Plainsboro, and all of said tracks, including No. 5, were used in interstate commerce. At this place tracks Nos. 1, 2, 3 and 4 were connected by a system of

cross-over switches already in operation and which were operated from a switch tower near at hand, and in order to further facilitate switching operations at this point, another switch had just been laid between tracks Nos. 4 and 5, but had not yet been used, but the rails of this new switch had been run from track No. 4 to track No. 5, and had been nailed and spiked to the roadbed of these two tracks, over which interstate traffic was constantly passing, and the controlling device for this switch was being installed at the time of the accident by the gang with which plaintiff's intestate was working. While he was engaged with a fellow-workman, about eight hundred feet distant from the other members of the section gang, removing the stone ballast from between the ties under tracks Nos. 2 and 3, preparatory to running a pipe line under these tracks for the operation of the new switch point, plaintiff's intestate was struck and killed by an eastbound freight train, which had been moved from track No. 1 to track No. 2 on a cross-over, located about one thousand feet from where decedent was working. Between the place where decedent was working and the last-mentioned crossover, there was a signal bridge, with signals denoting when a train would make the cross-over. Suit was brought by the general administratrix of the deceased, under the Federal Employers' Liability act (*U. S. Comp. Stat.* 1916, §§ 8657, 8665), and was grounded upon the proposition that both the deceased employe and the railroad company were engaged in interstate commerce at the time of the accident, and the act of negligence complained of was that the boss or foreman of the section gang, in which plaintiff's intestate was working, failed to discharge his duty, established by custom, to blow a whistle to notify deceased and his co-employes of the approaching train. At the outset of the suit a motion was made to strike out the complaint on the ground that it should have been prosecuted by an administratrix *ad prosequendum* under chapter 180, *Pamph. L.* 1917, *p.* 531. The rule to show cause on this motion was discharged by the Supreme Court and the cause went to trial in the Burlington Circuit and resulted in a verdict for plaintiff, from which defendant appeals.

The first point urged by defendant for a reversal is, that the court erred in refusing to grant defendant's motion for a nonsuit and the motion for the direction of a verdict in its favor based upon the ground that decedent was not engaged in interstate commerce at the time of the accident, because, as was claimed, the work in question was new work and had not been used in interstate commerce. We think that the defendant lays too much stress upon the words "new work." In a sense, all work is new, but from the fact that it is new, it does not follow that it is not a part of the interstate commerce in which the carrier is engaged. As was said by the learned Chief Justice in *Lincks* v. *Erie Railroad Co.*, 91 *N. J. L.* 166, following the expression of the United States Supreme Court in *Pederson* v. *Delaware, Lackawanna and Western Railroad Co.*, 229 *U. S.* 146: "The test is whether the particular work upon which the employe was engaged at the very time of the accident was a part of the interstate commerce in which the carrier was engaged." Applying this test to the facts of the case *sub judice,* we find that decedent was engaged at the very time of the accident in removing stone ballast from between the ties under tracks Nos. 2 and 3, both, concededly, used in interstate commerce, and the purpose of this work was to prepare these lines to accommodate a pipe line which was to run under them and operate a new switch and thereby facilitate interstate commerce between the four main-line tracks and the siding known as No. 5, which was also used for interstate purposes. He was not working on a new line, but the old one being amplified for more efficient service. The controlling device being installed to operate this new switch or cross-over, was not separate and apart from the main line, something operated independently of it, or independently of the interstate commerce in which the defendant was engaged, but was, in a sense, a part and parcel of the main line itself, something attached to and operated in connection with it in carrying on such commerce. Cases are cited by defendant, such as *Bravis* v. *Chicago, Minneapolis and St. Paul Railway Co.*, 217 *Fed. Rep.* 234, and *Jackson* v. *Chicago*

*and St. Paul Railway Co.*, 210 *Id.* 495, which hold that the building of a new instrumentality to be used in interstate commerce is not work to which the federal act applies, but these cases relate to a new and distinct construction. We do not think that the work of connecting by a cross-over switch for convenience in operation an existing interstate track with another existing track, also used for interstate purposes, and running side by side on the same general roadbed, falls within the line of cases cited. *Collins* v. *Michigan Central Railroad Co.*, 159 *N. W. Rep.* 535; *Grow* v. *Oregon Short Line Railway Co.*, 44 *Utah* 160; 138 *Pac. Rep.* 398; *Tonsellito* v. *New York Central and Hudson River Railroad Co.*, 87 *N. J. L.* 651. We, therefore, find no error in the refusal to grant a nonsuit or direct a verdict for defendant on the ground stated.

A further ground of appeal is the refusal of the trial court to charge, as requested, the same principle urged for the nonsuit and direction of a verdict, and the conclusions above expressed by us on this subject, dispose of this ground of appeal adversely to the defendant's contention, and as the trial court charged on this point in accordance with the views so expressed, we find no error in the charge on this subject.

It is further contended as a ground for reversal that the plaintiff's intestate assumed the risk of the negligence of his fellow-servants in failing to give a warning of the approaching train, notwithstanding the provisions of the Federal Employers' Liability act. There was evidence in the case from which the jury might properly find that a custom existed requiring the foreman of the gang of workmen to give warning of the approaching train by blowing a whistle, and that no such warning was given, and that the foreman was negligent in this respect, and there was also evidence from which the jury might infer that the decedent relied upon this warning being given, so, that the question for solution resolves itself into determining whether the negligence of the foreman of the section gang in not blowing the whistle according to custom to warn of the approaching train, was a risk assumed by the plaintiff's intestate as an incident of his employment, under the provisions of the Federal Employers' Liability act.

In support of its position, defendant refers us to the case of *Precodnick, Administratrix, v. Lehigh Valley Railway Co.,* 74 *N. J. L.* 366, but there it was proven to be the custom that when one was working alone and separate from the rest of the gang, he should look out for his own safety, whereas, in the case *sub judice,* the custom was that the men must be warned at all times of approaching trains by the blowing of a whistle. This being so, we think the first difficulty with defendant's contention is that the foreman, under the rule laid down in *Germanus* v. *Lehigh Valley Railway Co., Id.* 662, was not a fellow-servant of the decedent, for, as the court said in that case, "where the custom of giving a warning by the foreman is proved, it is embraced in the duty owed by the master to the servants, and for the failure of the foreman properly to discharge that duty the master is responsible." And the second difficulty with defendant's contention on this point is, that even though the foreman could under the facts in this case be considered as the fellow-servant of decedent, nevertheless, the common law doctrine of assumption of risk, where it arises solely and directly out of the negligent acts of fellow-servants, has been abolished by the Federal Employers' Liability act, as was held by us in the recent case of *Stiedler* v. *Pennsylvania Railroad Co., ante p.* 197, where Mr. Justice Minturn, speaking for this court, said, *inter alia:* "We think there was ample proof in the case from which the jury might infer negligence upon the part of the co-employe. Such negligence is contemplated as the basis for an action under the federal act, and the common law doctrine of assumption of risk from the negligence of fellow-servants is thereby abolished, and the plaintiff's contributory negligence presents merely a basis for the reduction of damages based upon the rule heretofore peculiar to admiralty," citing *Santomassimo* v. *New York, Susquehanna and Western Railroad Co.,* 92 *N. J. L.* 10, and *Grybrowski* v. *Erie Railroad,* 88 *Id.* 1; affirmed in this court in 89 *Id.* 361. We, therefore, conclude that decedent did not assume the risk of the negligence of

his foreman in failing to give warning of the approaching train, and, therefore, there was no error in the refusal to charge as requested and to nonsuit or direct a verdict on the proposition contended for by defendant, and since the trial court charged on this subject in accordance with the views we have just expressed, we find no error therein.

During the course of the trial plaintiff proved what decedent was earning at the time of his death, and was then permitted to ask over defendant's objection what wages defendant was paying at the time of trial to men employed in exactly the same line of work as that in which decedent had been engaged. Defendant insists that such testimony was immaterial because there was no testimony in the case as to how much plaintiff's intestate contributed towards her support, and that before testimony as to the increase or probable increase in his earning capacity could be admissible, there must be some testimony in the case from which the jury could infer that he would give a certain proportion of it to the beneficiary. The principal difficulty with this argument is, that it is based upon a wrong assumption of fact, for decedent's widow testified that he had no property; that they lived together and had no other source of income than his wages, and when asked how she got money to live on, she replied, "Well, it was what he earned." The jury were, therefore, in possession of facts from which they might infer what benefit would have accrued to decedent's beneficiaries if he had lived. We think, therefore, it was competent to prove what the employer was paying at the time of trial to employes engaged in exactly the same line of work as that in which the decedent had been engaged.

At the close of the case, but before the court's charge, plaintiff was permitted over the defendant's objection to amend the complaint by adding as one who would suffer pecuniary loss besides the widow a child who, at the death of plaintiff's intestate, was *in ventre sa mere*, but who was born in the interim between the filing of the complaint and the

trial, and also to amend by adding in addition to the charge in the complaint that "the defendant by its servants and agents failed and neglected to give any warning of the approach of said train," a further allegation setting forth distinctly as an act of negligence that the foreman or person charged with giving notice of the approach of the train failed to give notice. Defendant insists that these amendments so materially alter the complaint as to practically charge a different cause of action, and for that reason come within the prohibition of the statute limiting such actions to two years after the cause of action arose. The power to amend is defined in sections 23 and 24 of the supplement to our Practice act (*Pamph. L.* 1912, *p.* 381), which confers upon the court the power to permit "before or at the trial the statement of a new or different cause of action in the complaint or counterclaim." Whether this would permit the statement of a new or different cause of action after the limitation prescribed by statute in which to bring the action had matured, we find it unnecessary to determine, for we do not consider that the amendments amounted to the statement of a new or different cause of action, but merely expanded or amplified what was already alleged in support of the action and therefore related back to the commencement of the action and were not affected by the intervening lapse of time. *Seaboard Air Line* v. *Renn,* 241 *U. S.* 290; *Texas and Pacific Ry.* v. *Cox,* 145 *Id.* 593, and *Missouri, Kansas and Texas Ry. Co.* v. *Wulf,* 226 *Id.* 570. The first amendment did not add a new party to the suit, for the general administratrix remained the sole plaintiff, and all it did was to set forth the child as another dependent of decedent, and the second amendment merely amplified the acts of negligence already complained of and neither could in any sense be said to state a new or different cause of action.

It is further insisted as a ground for reversal that the Supreme Court erred in discharging the rule to show cause why the complaint should not be struck out and the action dis-

missed because brought by a general administratrix instead of an administratrix *ad prosequendum* under the provisions of the supplement to our Death act, which supplement is found in *Pamph. L.* 1917, *chap.* 180, *p.* 531, which provides that any action brought under and by virtue of its provisions shall be in the name of an administratrix *ad prosequendum.* We think the Supreme Court was right, for the remedy sought to be enforced is not provided by our state statute, but is conferred by federal legislation, and in the enforcement thereof the method of procedure outlined by congress must be followed, and this method as provided in the federal act is that the liability of the carrier in case of the death of the employe is "to his or her personal representative for the benefit of the surviving widow," &c., and the United States Supreme Court has interpreted that language to mean the executor or general administrator. *American Railroad Co.* v. *Birch,* 224 *U. S.* 547; 56 *L. Ed.* 879; *Missouri, Kansas and Texas Railway Co.* v. *Wulf, supra,* and *St. Louis, S. F. & T. Ry. Co.* v. *Seale,* 229 *U. S.* 156; 57 *L. Ed.* 1129. The general administratrix is, therefore, the only person who could properly maintain this action.

We have carefully examined the other points raised by defendant but find them to be without merit.

The judgment will be affirmed.

*For affirmance*—SWAYZE, TRENCHARD, BERGEN, MINTURN, BLACK, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ.  10.

*For reversal*—None.