PETERSON v. UNION PACIFIC R. CO.

No. 4964. Decided March 1, 1932. (8 P. [2d] 627.)

216

*Geo. H. Smith, R. B. Porter,* and *W. Hal Farr,* all of Salt Lake City, for appellant.

*P. C. Evans, Willard Hanson,* and *A. H. Hougaard,* all of Salt Lake City, for respondent.

FOLLAND, J.

This is an action by plaintiff as administratrix of the estate of John F. Peterson brought under the Federal Employers' Liability Act (45 USCA §§ 51-59) to recover damages for the death of John F. Peterson who was killed February 13, 1925, while employed by defendant on its interstate railroad. From a verdict and judgment in favor of plaintiff, defendant appeals. The deceased, John F. Peterson, was employed by the defendant as a section laborer on its tracks in Weber county. He had worked for defendant in this capacity for several years. At the point where the accident occurred, there is a cut in the side of the mountain. The wall immediately adjacent to the track is almost perpendicular for about 60 feet, and from that point there is a gradual slope up the mountain of approximately 33 degrees for several hundred feet. During the winter months, the alternate freezing and thawing of the water in the ground tends to loosen rocks on the mountain, and they sometimes roll down the mountain side. The accident occurred February 13, 1925, while deceased was clearing the track of rocks which had rolled down onto the right of way. It is claimed by the plaintiff that it was one of the duties of the section foreman to station himself at a point where he could command a view of the mountain side and to warn the men working on the track in this cut when any rock started rolling down the mountain side so that the men might seek shelter and protect themselves. The foreman immediately prior to the accident left the track where the men were working to consult with the roadmaster who was at a place on another track of the defendant at a point lower down the mountain. As he was returning, he saw the rock coming down the mountain about 20 feet above the

cliff, and shouted, "Rock coming, look out." The warning, however, came too late. The deceased, who was raking rocks off the inner edge of the right of way, raised his head and started to get up, but was immediately struck in the head by the rock and almost instantly killed. The rock which struck deceased was identified as having originated at an igneous dike nearly 600 feet up the mountain side.

It is first urged by defendant that the cause of action sued upon is barred by the two-year limitation in the Federal Employers' Liability Act, not that the complaint was not filed within that time, but because the amended complaint, which it is claimed states a new and different cause of action, was not filed until July, 1928, or more than two years after the cause of action occurred, February 13, 1925. Defendant's objection is that the amended complaint sets out an entirely new act of negligence or cause of action, and is therefore barred.

It is contended by respondent that appellant cannot now raise the question of the two-year limitation, that it has waived this defense by failure to plead the statute of limitations either by way of demurrer or answer, and in support of its position cites Comp. Laws Utah 1917, §§ 6573, 6602 and 6469; *Gulbransen* v. *Thompson*, 63 Utah 115, 222 P. 590, and other Utah cases to similar effect. The action, however, was brought under the Federal Employers' Liability Act wherein it is provided (section 6 of the act [45 USCA § 56]) that "no action shall be maintained under this chapter unless commenced within two years from the day the cause of action accrued." This, therefore, is not a case which comes within the rule that the statute of limitations is waived unless pleaded. The act of Congress which gives the right of action also limits the time within which the action must be brought. In this class of cases it has been held that the commencement of the action within the prescribed time is a condition of the right itself, and, if condition as to time is not complied with, not only is the remedy

barred, but the right itself ceases to exist. In such cases the objection may be relied on, although not specifically pleaded, and advantage of the objection may be taken by general demurrer, if by the complaint it is shown that the limitation has run. 2 Roberts, Federal Liabilities of Carriers (2d Ed.) pp. 1829 and 1830; *Atlantic Coast Line R. Co.* v. *Burnette,* 239 U. S. 199, 36 S. Ct. 75, 60 L. Ed. 226; *Louisville & N. R. Co.* v. *Echols,* 203 Ala. 627, 84 So. 827; *Phillips Co.* v. *Grand Trunk W. R. Co.,* 236 U. S. 662, 35 S. Ct. 444, 59 L. Ed. 774; *Kannellos* v. *Great Northern R. Co.,* 151 Minn. 157, 186 N. W. 389, second appeal 157 Minn. 505, 196 N. W. 280; Thornton Federal Employers' Liability Act (3d Ed.) 231. It follows, therefore, that the question of whether the amended complaint is within time under the circumstances of this case was properly raised by the demurrer to the complaint, and may now be reviewed by us, notwithstanding the statute of limitations was not specially pleaded.

The original complaint proceeded on the theory that the rock fell from the overhanging ledge left upon excavation of the right of way out of the mountain side, and specified the various acts of negligence of the defendant company as follows:

"(a)  The defendant failed in his duty to provide the said Peterson with a safe place in which to perform his work.

"(b)  The defendant negligently failed in its' duty to warn the deceased or to inform him that it had not made an inspection of the said overhanging ledge.

"(c)  The defendant carelessly and negligently failed to make an inspection of the said overhanging ledge after the passage of trains.

"(d)  That it negligently and carelessly failed to remove from the said ledge and its vicinity any loose rocks and other material, well knowing that the same might and would fall from said cliff during thawing weather.

"(e)  That it negligently failed to construct or maintain a suitable device for preventing loose rocks from falling from said ledge and injuring its employees.

"(f)  That it negligently failed to keep the top of said cliff free from loose rock, and that it carelessly directed the said deceased to perform his work in the vicinity of the said overhanging ledge at a time

when defendant knew, or in the exercise of reasonable care should have known, that rocks were liable to fall from said cliff by reason of the vibration of passing trains or by reason of the thawing temperature, both or either of which would tend or cause rocks to fall from the said cliff or ledge, and that because of the said negligence on the part of the defendant and as a result thereof the said Peterson was injured and died as hereinbefore alleged."

And also:

"Plaintiff further alleges that on the day upon which the said Peterson met his death as hereinafter alleged, there had been trains passing over the defendant's right of way, which caused vibrations tending to cause the rocks upon and near the face of said ledge of rock to fall at the point where the said deceased was injured; that during the time immediately preceding the said accident, there had been a thaw; that during thawing weather the rocks and other loose material were liable to and did fall from the said cliff, all of which was, or should in the ordinary exercise of care, have been known to the defendant; that the defendant, well knowing the dangers permitted and directed the said Peterson to work in the vicinity of and under said overhanging ledge of rock without taking any precaution to remove the loose earth and material from and in the vicinity of said ledge of rock and without placing a lookout to warn the said deceased in time to enable him to escape the danger from the falling rock."

The amended complaint proceeded upon the theory that the rock rolled down the mountain side from above the precipitous ledge, the allegations of defendant's duty in the premises being as follows:

"Plaintiff further alleges that because of the loose rocks and the nature of said mountain side along which said track was constructed as aforesaid, and because of the likelihood of rocks rolling down said mountain side and onto said track, there was great and grave and imminent danger of the rock so rolling striking employees who were required to, in the performance of their duties, work along and upon said track so extending along said mountain side as aforesaid, and that in order to properly safeguard said employees so required to work as aforesaid, it was the duty of said defendant to have some person watching said hillside for rocks rolling down the same, and to warn said employees so working along said track of the rolling of said rocks, in order that the said employees could avoid being struck by the same."

Both complaints have reference to the same circumstances resulting in death of the workman, that is, the deceased working on the track by the side of the precipitous cliff or overhanging ledge being struck by a falling rock resulting in death. The difference is in the point from which the rock came. That it came from above is alleged in both complaints; in the first, that it came from the ledge; and, in the second, that it came from higher up on the mountain side. In the first complaint, the negligence is stated to be failure to provide a safe place to work, and that no inspection or warning that such inspection had not been made of the overhanging ledge and also failure to warn of falling rocks. In the second complaint, the acts of negligence respecting the ledge are abandoned, and the one in respect to warning is retained and amplified and applied to rocks rolling down the mountain side. The question then is whether or not the amended complaint states a new or different cause of action so that the limitation intervenes and cuts off the right. It is well established that a new or different cause of action may not be alleged under the guise of an amendment, 49 C. J. 507; *Combined Metals et al.* v. *Bastian et al.*, 71 Utah 535, 267 P. 1020, and also that an amendment which does not set up a new cause of action relates back to the commencement of the action, *Chobanian* v. *Washburn Wire Co.*, 33 R. I. 289, 80 A. 394, Ann. Cas. 1913D, 730; note, 33 L. R. A. (N. S.) 196; 17 R. C. L. 815, 821. When a cause of action set forth in an amended pleading is new, different, and distinct from that originally set up, there is not relation back, and the amendment is the equivalent to the filing of a new action, so that the statute of limitations runs against it to the time of filing. 37 C. J. 1068, 1074; *Union Pacific Ry. Co.* v. *Wyler*, 158 U. S. 285, 15 S. Ct. 877, 39 L. Ed. 983; note, 3 L. R. A. (N. S.) 269, and note, 33 L. R. A. (N. S.) 196. Where the amendment merely expands or amplifies what is alleged in the original complaint, even though imperfectly, in support of the cause of action, it is properly allowed. *Thayer* v. *Smoky Hollow Coal Co.*, 129 Iowa 550, 105 N. W. 1024; *Larsen* v. *Gasberg,*

43 Utah 203, 134 P. 885; *Sargent* v. *Union Fuel Co.*, 37 Utah 392, 108 P. 928; and relates back to the commencement of the action. 37 C. J. 1073; *Seaboard Air Line Ry.* v. *Renn*, 241 U. S. 290, 36 S. Ct. 567, 60 L. Ed. 1006; *Swank* v. *Pennsylvania R. Co.*, 94 N. J. Law, 546, 111 A. 44, certiorari denied 254 U. S. 638, 41 S. Ct. 12, 65 L. Ed. 451; 2 Roberts Federal Liabilities of Carriers, 1946. While there are cases to the contrary *(Box* v. *Chicago, R. I. & P. R. Co.*, 107 Iowa 660, 78 N. W. 694; *Wabash R. Co.* v. *Bhymer*, 214 Ill. 579, 73 N. E. 879; *Harper* v. *Illinois C. R. Co.*, 74 Ill. App. 74)`, the great weight of authority seems to be that an amendment to a complaint setting forth an additional ground of negligence as the cause of the same injury does not amount to the statement of a new cause of action, 20 R. C. L. 177; *Chobanian* v. *Washburn Wire Co.*, supra; *Macklin* v. *Dunn*, 130 Tenn. 342, 170 S. W. 588, Ann. Cas. 1916B, 508; *Thayer* v. *Smoky Hollow Coal Co.*, supra, and that in a tort action an amendment may vary the statement of the original complaint as to the manner in which the plaintiff was injured or as to the manner of the defendant's breach of duty, 49 C. J. 517; *Sargent* v. *Union Fuel Co.*, supra; *Ft. Worth Belt R. Co.* v. *Jones* (Tex. Civ. App.) 182 S. W. 1184. There is applicable to cases of this kind the rule that a pleading should be liberally construed with a view to substantial justice between the parties, Comp. Laws Utah 1917, § 6596; *Grover* v. *Cash*, 69 Utah 194, 253 P. 676; note 8 A. L. R. 1406; especially where there is reasonable ground for holding that the amendment is an amplification of allegations already stated, *Clinchfield R. Co.* v. *Dunn* (C. C. A.) 40 F. (2d) 586, 74 A. L. R. 1276, the courts not being disposed to a technical or narrow construction where the transaction alleged in the amendment is the same as in the original complaint, *Texas & P. R. Co.* v. *Cox*, 145 U. S. 593, 12 S. Ct. 905, 36 L. Ed. 829.

The difficulty is not so much in stating the rules applicaable as in applying them to the facts of a case in determining whether an amended complaint states a new or a different

cause of action. The cases are in considerable conflict (37 C. J. 1076; note, 8 A. L. R. 1406), dependent largely on whether the court takes a narrow or a liberal view of the original complaint. When we compare the amendment with the original complaint in the light of the foregoing rules, we think there is such an identity of the cause of action as justifies us in holding that the amendment does not state a new or different cause of action, and therefore the limitation of time has not run against the cause of action stated therein. There are two points of divergence relied on by appellant, first, as to the negligence stated, and, second, the origin of the rock which struck deceased; while under the original complaint stress is laid on failure to warn deceased or to inform him that defendant had made no inspection of the overhanging ledge, failure to make such inspection of the ledge after the passing of trains, failure to remove loose rock from the ledge in the vicinity, or to keep the top of the cliff free from loose rock, and also in permitting deceased to work in the vicinity of, or under, the overhanging ledge without taking the precaution to remove loose materials and without placing a "lookout to warn the said deceased in time to enable him to escape the danger from the falling rock." It is this last assigned negligence which is relied on, amplified, and expanded in the amended complaint; the other allegations of negligence being abandoned. This is a sufficient allegation of failure to warn the deceased upon which to base the amendment. The accident is the same, the person killed the same, the manner in which the rock struck the deceased is the same, the time and circumstances the same except that in the first complaint it was alleged that the rock fell from the top or face of the cliff rather than farther up the mountain side. The injury to the deceased was caused by being struck by a falling rock. If plaintiff was misinformed as to the place from which it fell, we see no reason why by amendment that error cannot be corrected and the truth of the matter stated. This does not essentially change the character of the action, nor state a new or different cause of action. It

would be too narrow and technical a construction to hold that this is an entirely new and different cause of action from the one stated in the original complaint. This view is in harmony with previous decisions of this court. *Mackay* v. *Breeze,* 72 Utah 305, 269 P. 1026; *Sargent* v. *Union Fuel Co.,* supra.

It is next urged by appellant that the court erred 12-15 in overruling its general demurrer to the amended complaint. In support thereof, it says the complaint fails to state a cause of action

"because no decided case has ever gone to the point of holding that a railroad company must employ men where its road runs along a mountain side to watch for rocks and boulders which may become loose and roll down the mountain side. * * * There is no allegation in the present amended complaint that the defendant did employ any such a person or that the deceased was relying upon him to warn him of any danger. The allegation was merely that it was the railroad's duty to employ someone to watch the mountain side for rocks and to warn the employees if a rock was seen coming down the mountain side."

It also said:

"If it appeared that an employer did keep a man to watch out for the safety of other employees, and the complaint so alleged, and that the employees relied upon such protection from the master, then we would have a different situation."

We think the complaint does substantially so allege. True, it is stated in the plaintiff's amended complaint that "it was the duty of said defendant to have some person watching said hillside for rocks rolling down the same and to warn said employees so working along said tracks of the rolling of said rocks," but that is not all that is alleged from which the master's duty may be said to arise. If that allegation stood alone, it would be insufficient, because it is the allegation of a mere conclusion of law. *Herndon* v. *Salt Lake City,* 34 Utah 65, 95 P. 646, 131 Am. St. Rep. 827. Plaintiff alleges that defendant was directed to work in removing loose rocks which had rolled down the mountain

side on the railroad right of way, that the place which he was required to work was in close proximity to a precipitous and overhanging cliff extending approximately 20 feet above the tracks, but the evidence indicated that the cliff was upwards of 60 feet in height, and that the employees working there could not see the mountain side because of the cliff and could not see the rocks which might roll down from above the overhanging cliff, all of which the defendant well knew; and that, because of the precipitous nature of the slope and the great amount of rocks thereon, rocks frequently rolled down the mountain side and onto the tracks, and that there was great, grave, and imminent danger of the rocks so rolling striking employees who were required by performance of their duties to work along the track, and that, because of those facts, it is claimed it was the duty of the defendant to employ some one to watch for the rolling of rocks and to warn the deceased and other employees thereof. This, however, is not the entire allegation of the complaint, for it is further alleged that "in the performance of said work, it was the duty of said foreman to keep watch of said mountain side while the said employees were so working as aforesaid, and to observe the rocks that might be rolling or commence to roll down the mountain side," and to warn such employees of such fact, and, if the foreman were absent and could not watch for rolling rocks, it was his duty to so advise the employees and to designate some one of them to watch and warn during his absence, and that, unless this were done and the warning given, there was danger of the rocks rolling from the mountain side striking and endangering the employees, all of which it is alleged the defendant well knew. The allegation of duty of the foreman, while stated in language which is not to be commended in a pleading, is yet sufficient under the rule that, "where the word 'duty' may be used to designate the character of the work to be done or the act to be performed pursuant to the employment * * * the allegation is one of ultimate fact." 49 C. J. 71; *Chicago & E. R. Co.* v. *Hamerick,* 50 Ind. App. 425, 96 N. E. 649; *Angola Ry. &*

*Power Co.* v. *Butz,* 52 Ind. App. 420, 98 N. E. 818. We regard this allegation as one of ultimate fact rather than a legal conclusion, and, as such, it states the scope of the employment of the foreman, and is sufficient to withstand attack by general demurrer. Such an allegation being in general terms of an ultimate fact may well be subject to a special demurrer or a motion to make more specific, but in this case no such attack was made. Under such an allegation it was competent to prove that it was customary for the foreman to watch for rolling rocks and warn the employees working under the cliff of any rocks rolling down the mountain side and endangering their safety. Such facts were proved at the trial. The testimony of the foreman that such had been his practice was admitted without objection, and the only objection to the testimony of other witnesses to similar effect was on the grounds of immateriality, and the action of the court in overruling such objections is not assigned as error nor argued in defendant's brief. From the allegations in the complaint, it appears that the defendant company did "keep a man to watch out for the safety of other employees," and, while it is not specifically alleged that the deceased relied upon such practice, it follows that the deceased had a right under the circumstances to rely on a warning to be given in time to afford him opportunity to seek a place of safety. *Andreson* v. *Ogden Union Ry. & Depot Co.,* 8 Utah 128, 30 P. 305; 39 C. J. 458.

Defendant next urges that the court erred in denying defendant's motion for directed verdict on the grounds that there is not evidence of negligence on the part of the defendant, and that the deceased assumed the risk of the injury. The negligence alleged is that the foreman carelessly and negligently left the place where he could have observed rocks falling from the mountain side, and went to a position on another track of the defendant farther down the mountain side, from which place he was unable to properly observe such rolling rocks or give timely warning, and that he negligently failed to notify the deceased that he was about to leave his post or to desig-

nate another employee to watch and give the warning. There is evidence tending to prove, and sufficient to go to the jury and support its verdict, that it was the custom and practice of the foreman to station himself in a position to see and give warning when men were working at places such as this, where it could reasonably be anticipated that rocks might roll down and endanger the lives of the men working under the cliff, and where the workmen could not command a view of the mountain side and thus watch out for their own safety, and that the workmen, including deceased, knew of the practice and relied upon the foreman performing such service, and, in his absence, to either notify the men to watch out for their own safety or to designate some one to watch and warn during his absence. Shortly prior to the accident and injury to the deceased, the foreman left his place near where the deceased was working, and went to another track lower down the mountain side to there consult with defendant's roadmaster, and that he did not designate any one to keep watch nor notify the deceased that he was leaving. As the foreman was returning to the track and vicinity where the deceased was working, he observed the rock above the cliff, and shouted, "Rock coming, Look Out!" The warning, however, came too late. The deceased, bending over his work, straightened up for the apparent purpose of seeking a place of safety, and, before he could move from where he stood, the rock struck him, and he died shortly thereafter. The foreman testified that he notified the men that he was leaving his post, but there was evidence to the contrary, from which the jury might reasonably infer that the deceased was not so notified. The evidence on this point being in dispute, it was for the jury to determine whether the notice was given or not, and they were justified in concluding that the foreman was negligent if they believed that no such notice was given.

Defendant says the deceased assumed the risk of the injury since the danger of the rock rolling down the mountain side was one of the ordinary risks of his employment, that

deceased had worked on the railroad track for a number of years, and knew the conditions and dangers as well as any one, and that he knew no one was watching for rolling rocks, and that he must take care of himself. If such were the undisputed evidence, let it be assumed the defendant's contention should be sustained. But, as we have already indicated, it was sufficiently proved that the foreman customarily watched for rolling rocks in order to notify the men of their coming. His testimony was, as taken from the abstract, "Twice a year, once in the spring and once in the fall, the men would go along the mountain side and all rocks that were loose we would roll down. We had not been up the mountain side this spring yet when Mr. Peterson was killed. I had been watching for rocks while the men were working and then if I saw a rock coming, I would tell them. That is the way I was doing all the time." The evidence was without dispute that the foreman left his place of observation near where the men were working and descended to a lower track some 50 or 60 feet away, but there is a conflict in the evidence as to whether the workmen were notified that the foreman did leave, but there is sufficient evidence to support a finding by the jury that he did not so notify this deceased. The court would not be justified in granting a directed verdict on this ground, unless the evidence was free from conflict that the deceased was so notified by the foreman and thus placed upon his own responsibility to assume the risk of rolling rocks striking him while at work during the absence of the foreman. The question resolves itself to determining whether the negligence of the foreman, in leaving his post without notification and without indicating some one else to stand guard was a risk assumed by the deceased. Had there been no custom or practice of watching for rolling rocks and the giving of warning, or if it were proved without conflict that deceased was aware that the foreman had left his post and had left no one to watch or warn in his place, and that the deceased appreciated the attendant danger, it might then be argued that the deceased assumed the risk. Though true

that there were dangers incident to the work which were assumed by the deceased, yet he did not assume the risk of the unexpected negligent departure of the foreman from his post of duty and his consequent failure to give a timely warning so that the deceased could take advantage of such warning. *Swank* v. *Pa. R. Co.*, 94 N. J. Law, 546, 111 A. 44; *Germanus* v. *Lehigh R. Co.*, 74 N. J. Law, 662, 67 A. 79; *D'Agostino* v. *Pa. R. Co.*, 72 N. J. Law, 358, 60 A. 1113; 3 Labatt, Master & Servant, p. 2936.

The judgment is sustained, with costs to respondent.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.