Associate Chief Justice Lee, dissenting:
 

 ¶61 Rule 15(c) states that "[a]n amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out ... in the original pleading." UTAH R. CIV. P . 15(c)(2). The key question presented here concerns the meaning of "conduct, transaction, or occurrence." The majority treats this question as a matter dictated by our precedent, particularly
 
 Behrens v. Raleigh Hills Hosp., Inc.
 
 ,
 
 675 P.2d 1179
 
 (Utah 1983), and
 
 Peterson v. Union Pac. R.R. Co.
 
 ,
 
 79 Utah 213
 
 ,
 
 8 P.2d 627
 
 (1932).
 
 See
 

 supra
 
 ¶¶39-40, 47. It says that these cases call for relation back of an amended claim when it is based on the same legal theory as that alleged in an earlier pleading and "expand[s] upon [the] factual basis" giving rise to that complaint.
 
 Supra
 
 ¶¶47, 51.
 

 ¶62 I disagree. The cited cases do not support the standard announced by the majority. None of our cases attempt to interpret-or even quote or paraphrase-the operative text of rule 15(c). So the question presented here is a matter of first impression. And the standard called for by the text of the rule is different from that adopted by the court.
 

 ¶63 I would interpret the "conduct, transaction, or occurrence" standard in light of a body of federal case law clarifying the meaning of this legal term of art (which our Utah rule borrowed from the Federal Rules of Civil Procedure). And I would affirm the
 district court's decision granting the State's motion to dismiss Osman Noor's amended PCRA petition because his new claim for ineffective assistance of counsel arises out of an entirely distinct transaction or occurrence from that which gave rise to his initial set of claims.
 

 ¶64 The claim in Noor's original petition arose out of the allegation that his Somali background and "lack of fluency in English" "prevented him from forming the requisite intent to commit lewdness or forcible sexual abuse" and "impaired his ability to understand the victim's demands that he stop his advances." Noor asserted that no reasonably competent attorney would have failed to assert a
 
 mens rea
 
 defense in these circumstances. So the relevant "transaction" giving rise to Noor's earlier claim was his lawyer's failure to appreciate the culture and language barriers to Noor's interactions
 
 with the victim of his crimes
 
 .
 

 ¶65 This was not the "transaction" giving rise to Noor's amended claim. That claim arose out of his counsel's failure to appreciate the language barriers to Noor's interactions
 
 with his attorney
 
 . That is a distinct transaction. It may arise out of "expanded" factual circumstances related to the earlier claim. But rule 15(c) requires more than a vague notion of factual expansion. It calls for relation back only where both sets of claims arise out of the
 
 same
 
 conduct, transaction, or occurrence set forth in the original complaint.
 

 ¶66 I respectfully dissent because I think the district court was right to deny Noor's motion for leave to amend. And I write separately to highlight some problems that will result from the majority's reformulation of the standard that governs relation back under civil rule 15(c).
 

 I. The Majority's Standard
 

 ¶67 The majority seeks to trace its relation back standard to a "consistent[ ]" line of precedent from this court.
 
 Supra
 
 ¶47. Citing
 
 Behrens v. Raleigh Hills Hosp. Inc.
 
 ,
 
 675 P.2d 1179
 
 (Utah 1983), and
 
 Peterson v. Union Pac. R.R Co.
 
 ,
 
 79 Utah 213
 
 ,
 
 8 P.2d 627
 
 (1932), the court says that "it is well established in our caselaw that we look to the cause of action" stated in the original pleading and ask "whether, under a liberal reading," a proposed amendment "can be said to expand or modify the original cause of action stated."
 
 Supra
 
 ¶47 n.57.
 

 ¶68 Based on these cases, the majority holds that an amendment relates back to the date of an original pleading "when the 'amendment ... does not import into a case a new and different cause of action,' but instead 'merely expands or amplifies what is alleged in the original [pleading].' "
 
 [74]
 

 Supra
 
 ¶47 (alterations in original). And it states that "an amendment arises out of the same 'conduct, transaction, or occurrence' when it arises out of the same cause of action,"
 
 supra
 
 ¶47, as that alleged in the original pleading and is based on factual allegations that "expanded upon the factual basis" of the original pleading.
 
 Supra
 
 ¶51.
 

 ¶69 I disagree with the majority's standard and its application of our case law. Our cases have never interpreted the language of rule 15(c). So we should begin by interpreting the operative text. That text is incompatible with the majority's standard. Instead of asking whether the amended pleading "expand[s] upon [the] factual basis" of the earlier one, the rule requires that both claims arise from the same "conduct, transaction, or occurrence." The majority's standard is likewise incompatible with our case law. And the cases cited by the majority do not support its proposed standard.
 

 A. Peterson v. Union Pacifiic Railroad Co.
 

 ¶70 The seminal Utah case is
 
 Peterson v. Union Pacific Railroad Co.
 
 ,
 
 79 Utah 213
 
 ,
 
 8 P.2d 627
 
 (1932). The
 
 Peterson
 
 case involved tort claims asserted by the estate of John Peterson against his employer, Union Pacific Railroad Company. Peterson was killed while working to clear rocks off of a railroad track.
 
 Id.
 
 at 628. His estate filed a complaint asserting negligence claims under the Federal Employers' Liability Act,
 
 45 U.S.C. §§ 51
 
 - 59.
 

 Id.
 

 The original complaint was timely-within the two-year statute of limitations set forth in the federal statute.
 

 Id.
 

 But the estate later sought to file an amended complaint beyond the limitations period.
 

 Id.
 

 Union Pacific sought dismissal of the amended pleading on the ground that it "set[ ] out an entirely new act of negligence or cause of action," and was therefore time-barred.
 

 Id.
 

 at 628
 
 .
 

 ¶71 We concluded that the amended negligence claim related back to the date of the original complaint. And in so doing we stated, as the majority notes, that an amendment that "merely expands or amplifies what is alleged in the original complaint" is "properly allowed."
 

 Id.
 

 at 630
 
 (citations omitted). But this was not the articulation of an operative legal test (and it could not have been an interpretation of rule 15(c), which was not in existence at the time of this decision).
 
 [75]
 
 It was merely a statement of the court's holding. The court emphasized, moreover, that "[t]he cases are in considerable conflict" in their attempt to articulate a governing standard for distinguishing new claims from mere expansions of existing ones.
 

 Id.
 

 And the court's ultimate holding turned on the fact that both sets of negligence claims arose out of the same transaction or occurrence.
 

 Id.
 

 at 630-31
 
 .
 

 ¶72 Peterson was killed by a rock that fell from a cliff or ledge above the part of the track where he was clearing rocks. That much was undisputed. But the precise source of the falling rock was unknown. The initial (timely) "complaint proceeded on the theory that the rock fell from the overhanging ledge left upon excavation of the right of way out of the mountain side."
 

 Id.
 

 at 629
 
 . The amended (untimely) complaint, on the other hand, "proceeded upon the theory that the rock rolled down the mountain side from above the precipitous ledge."
 

 Id.
 

 And this difference yielded somewhat different sets of allegations of the nature of the railroad's negligence-with the original complaint focusing on an alleged "failure to provide a safe place to work" and failure to inspect or warn of falling rocks or that no inspection had been made, and the amended complaint abandoning the "acts of negligence respecting the ledge" while "retain[ing] and amplif[ying]" the failure to warn allegation as "applied to rocks rolling down the mountain side."
 

 Id.
 

 at 630
 
 .
 

 ¶73 We concluded that the amended complaint asserted a claim that "merely expand[ed] or amplifie[d] what [was] alleged in the original complaint."
 

 Id.
 

 But we emphasized the "difficulty" of distinguishing new claims from mere expansions of existing ones.
 

 Id.
 

 And we based our decision on the fact that "the transaction alleged in the amendment is the same as in the original complaint"-in that "[t]he accident is the same, the person killed [is] the same, the manner in which the rock struck the deceased is the same, the time and circumstances the same except that in the first complaint it was alleged that the rock fell from the top or face of the cliff rather than farther up the mountain side."
 

 Id.
 

 In other words, we said that a mere change in theory as to the "place from which" the rock fell "does not essentially change the character of the action, nor state a new or different cause of action."
 

 Id.
 

 at 631
 
 . We held that "[i]t would be too narrow and technical a construction to hold that this is an entirely new and different cause of action from the one stated in the original complaint."
 

 Id.
 

 ¶74 The majority opinion accordingly finds no footing in the
 
 Peterson
 
 opinion.
 
 Peterson
 
 does not say that an amended claim relates
 back when it "arises out of the same cause of action" and "expand[s] upon th[e] factual basis" of the original pleading.
 
 Supra
 
 ¶¶47, 51. It requires that both claims arise out of the same
 
 transaction
 
 .
 
 Peterson
 
 ,
 
 8 P.2d at 630
 
 (noting that "an amplification of allegations already stated" may be permitted "where the
 
 transaction
 
 alleged in the amendment is the
 
 same
 
 as in the original complaint") (emphases added).
 

 ¶75 The
 
 Peterson
 
 opinion admittedly speaks in terms of a distinction between "new" claims and those that merely "expand" on existing ones. But it also emphasizes that line-drawing in this area is "difficult." And its holding ultimately turns on the fact that the two sets of claims in the case arise out of the same transaction or occurrence (and not merely that they make factual allegations that expand on the original pleading).
 

 ¶76 To the extent
 
 Peterson
 
 articulates a test that speaks of
 
 new
 
 claims versus
 
 existing
 
 ones, it is at odds with the text of Rule 15(c).
 
 Peterson
 
 was handed down well before our adoption of the Utah Rules of Civil Procedure. And the question presented in this case concerns the meaning of the "conduct, transaction, or occurrence" test set forth in Rule 15(c). Because that rule was adopted well after
 
 Peterson
 
 , we cannot cite that case as establishing a controlling precedent under the rule.
 
 [76]
 

 B. Behrens v. Raleigh Hills Hospital, Inc.
 

 ¶77 The next case cited by the majority is
 
 Behrens v. Raleigh Hills Hospital, Inc.
 
 ,
 
 675 P.2d 1179
 
 (Utah 1983).
 
 Behrens
 
 is a wrongful death case against a hospital. The decedent was admitted for treatment for alcohol abuse at the defendant hospital and was given a razor when he asked to be allowed to shave.
 

 Id.
 

 at 1181
 
 . He then killed himself with the razor. His estate sued the hospital for wrongful death and received a judgment for $100,000 in a jury trial.
 

 Id.
 

 The trial court granted a motion for new trial, however, based on the failure to give a jury instruction for comparative negligence.
 

 Id.
 

 At that point the plaintiff sought to amend the complaint to add a claim for punitive damages.
 

 Id.
 

 The defendant asserted "that the claim for punitive damages [was] a new claim for relief that [was] barred by the statute of limitations."
 

 Id.
 

 at 1182
 
 .
 

 ¶78 This court rejected that argument. We held that "an amendment to include damages does not import into a case a new and different cause of action," and thus concluded that the punitive damages claim related back to the date of the original complaint.
 

 Id.
 

 (citations omitted). In so holding we cited rule 15(c), which was then in effect.
 
 See
 

 id.
 

 at 1183
 
 . But we did not quote the operative language of the rule or offer any interpretation of it. Instead we relied on precedent in Utah and elsewhere holding that a request for punitive damages relates back where it "raise[s] no new legal issues" and "does not refer to new or different acts of misconduct."
 

 Id.
 

 ¶79
 
 Behrens
 
 does not support the majority's new standard. Nowhere does the court endorse the view that a claim in an amended pleading relates back when it "arises out of the same cause of action" and is a factual expansion of allegations in that pleading.
 
 Supra
 
 ¶47. The two claims in
 
 Behrens
 
 , in fact, were in some sense distinct: "The proposed amendment to the complaint [did] not refer to new or different acts of misconduct; rather, the amendment relie[d] upon a different legal characterization of the same conduct"-in extending the initial allegation that the defendant's conduct was "negligent" to include an allegation that it was also " 'grossly negligent' or reckless."
 
 675 P.2d at 1183
 
 .
 

 II. My Approach
 

 ¶80 For reasons explained above this case presents a question of first impression. Because our cases have never interpreted the "conduct, transaction, or occurrence" standard in rule 15(c) we should start with first principles. Those principles begin with the language of the rule.
 
 See
 

 Olsen v. Eagle Mountain City
 
 ,
 
 2011 UT 10
 
 , ¶ 9,
 
 248 P.3d 465
 
 . And the operative text says that an amended claim relates back when it arises out of the same "conduct, transaction, or occurrence" set forth in the original complaint. UTAH R. CIV. P . 15(c).
 

 ¶81 The quoted language was imported from rule 15(c) of the Federal Rules of Civil Procedure. FED. R. CIV. P . 15(c)(1)(B) ;
 
 see also
 
 UTAH R. CIV. P . 15(c) & Foreword (1950). Our adoption of Utah Rule 15(c) was accordingly an adoption of the cluster of principles embedded in federal law.
 
 [77]
 
 And I would thus start with the body of case law interpreting the federal rule in seeking to understand the meaning of "conduct, transaction, or occurrence."
 

 ¶82 I am not saying that we are required to follow the federal case law.
 
 See
 

 supra
 
 ¶47 n.57. The federal standard is in no way binding on this court. The applicable rule is a Utah Rule of Civil Procedure. So it is ours to interpret. But the question of interpretation presented in this case is a matter of first impression. Our cases have never interpreted the operative "conduct, transaction, or occurrence" standard in rule 15(c). We should offer an interpretation of that language now. And the starting point for our interpretation should be the text of that rule.
 

 ¶83 This text incorporates a longstanding legal term of art. And we should thus interpret the rule's language by reference to the body of case law establishing the meaning of these terms.
 
 Maxfield v. Herbert
 
 ,
 
 2012 UT 44
 
 , ¶ 31,
 
 284 P.3d 647
 
 ("[W]hen a word or phrase is 'transplanted from another legal source ... it brings the old soil with it.' "(citation omitted) ).
 

 ¶84 I would do so here. In light of a longstanding, settled body of cases under federal rule 15(c) I would hold that the "conduct, transaction, or occurrence" test means what it says-it has reference to the factual circumstances giving rise to a set of claims. Thus, I would hold that an amended claim relates back to an original complaint when the new claim arises from the same set of factual circumstances alleged in the earlier complaint.
 
 [78]
 

 ¶85 This standard is easy to state in the abstract but sometimes difficult to articulate with particularity-and occasionally difficult to apply. But this case is an easy one. The transaction alleged in the original petition is quite distinct from that set forth in the amended pleading. In the first petition Noor focused on his trial lawyer's failure to appreciate the culture and language barriers to Noor's interactions
 
 with the victim of his crime
 
 . He alleged ineffective assistance of counsel in his trial lawyer's failure to assert a
 
 mens rea
 
 defense in light of these problems-a defense based on the idea that Noor's cultural background (Somali) and "lack of fluency in English" "prevented him from forming the requisite intent to commit lewdness or forcible sexual abuse" and "impaired his ability to understand the victim's demands that he stop his advances." But Noor changed the subject in his amended petition. He abandoned the focus on his lawyer's failure to appreciate the culture and language barriers to Noor's interactions with the victim of his crimes. Instead he asserted a claim arising from his lawyer's failure to appreciate the language barriers to Noor's interactions
 
 with his attorney
 
 . This claim asserted ineffective assistance in failing to engage an interpreter at trial, as allegedly necessary to allow Noor to communicate with his lawyer concerning his defense and strategy at trial.
 

 ¶86 The two petitions accordingly arise from distinct transactions. I would affirm the district court on this basis. I would conclude that Noor's amended claim for ineffective assistance of counsel cannot be viewed as arising from the same "conduct, transaction, or occurrence" set forth in the original complaint.
 

 A. The Standard in Rule 15(c)
 

 ¶87 The standard in rule 15(c) is straightforward. It says that an amended claim relates back when it arises from the same "conduct, transaction, or occurrence" alleged in the original complaint. The rule is accordingly focused on the factual circumstances giving rise to the plaintiff's claims. Courts have long held that an amended claim relates back if it arises out of the same factual circumstances-or the "conduct, transaction, or occurrence"-set forth in the original complaint.
 
 [79]
 
 And that holds regardless of whether the plaintiff's theory of recovery (or nature of the "cause of action," to use the majority's term) is distinct.
 
 [80]
 

 ¶88 The courts have sometimes struggled to state a comprehensive test delineating the scope of the relevant "conduct, transaction, or occurrence."
 
 [81]
 
 But the factual relationship between the original and amended petition has always required more than expansion on the facts in the initial pleading. Both sets of claims must arise from the
 
 same
 
 set of factual circumstances. And an amended claim-even
 one based on the same legal theory or cause of action as that set forth in the original complaint-does not relate back where it arises from conduct, a transaction, or an occurrence that was "distinct in time and place" from that alleged in the first pleading.
 
 [82]
 

 ¶89 The mere existence of factual expansion has never been sufficient. I am not aware of a single case prior to this one in which a court has concluded that a claim relates back so long as it expands upon the facts of an earlier pleading.
 
 [83]
 
 The majority nowhere explains how much "expansion" would be allowed under its novel standard. Such a standard, moreover, will undermine the notice rationale of rule 15(c).
 
 See
 

 supra
 
 ¶42 (highlighting this rationale). A standard allowing mere factual expansion to relate back will always beg the question of how much expansion is too much. And the arbitrary nature of that inquiry means that a defendant will have no notice of the range of claims that may later be deemed to relate back to an earlier pleading.
 

 ¶90 The way to provide notice is to adhere to the text of the rule. That text suggests that "a party who has been notified of a litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."
 
 Supra
 
 ¶42 (citation omitted). I would stick to that standard. I believe that doing so is the only way to advance the notice rationale highlighted by the majority.
 

 B. Mayle v. Felix
 

 ¶91 The United States Supreme Court's analysis in
 
 Mayle v. Felix
 
 ,
 
 545 U.S. 644
 
 ,
 
 125 S.Ct. 2562
 
 ,
 
 162 L.Ed.2d 582
 
 (2005), though not binding on this court, is also instructive. In
 
 Mayle
 
 the court was presented with a federal analogue to the question presented here-the standard for relation back under federal rule 15(c) for an amended claim for post-conviction review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).
 
 545 U.S. at 648
 
 ,
 
 125 S.Ct. 2562
 
 . That statute imposes a one-year limitation period for federal habeas petitions.
 
 28 U.S.C. § 2244
 
 (d)(1). And, as in this case, the petitioner in
 
 Mayle
 
 asserted a timely post-conviction claim but then later sought to amend the petition by adding a new claim. The timely claim in
 
 Mayle
 
 asserted that "the admission into evidence of videotaped testimony of a witness for the prosecution violated his rights under the Sixth Amendment's Confrontation Clause."
 
 545 U.S. at 648
 
 ,
 
 125 S.Ct. 2562
 
 . The untimely claim, alleged in an amended pleading filed five months after the expiration of AEDPA's time limit, asserted that "in the course of pretrial interrogation, the police used coercive tactics to obtain damaging statements from him, and that admission of those statements at trial violated
 his Fifth Amendment right against self-incrimination."
 

 Id.
 

 at 649
 
 ,
 
 125 S.Ct. 2562
 
 .
 

 ¶92 The district court in
 
 Mayle
 
 denied the petitioner's motion for leave to amend to add this claim, holding that petitioner's "allegedly involuntary statements to police d[id] not arise out of the same conduct, transaction or occurrence as the videotaped interrogation" of the prosecution witness.
 

 Id.
 

 at 652
 
 ,
 
 125 S.Ct. 2562
 
 (alteration in original). The Ninth Circuit reversed. It held that the relevant "transaction" under federal rule 15(c) was petitioner's "trial and conviction in state court."
 

 Id.
 

 at 653
 
 ,
 
 125 S.Ct. 2562
 
 (citation omitted).
 

 ¶93 The Supreme Court reversed, in an opinion by Justice Ginsburg. It noted that "[t]he key words are 'conduct, transaction, or occurrence.' "
 

 Id.
 

 at 656
 
 ,
 
 125 S.Ct. 2562
 
 . And it explained that the Ninth Circuit's "comprehensive definition" of those words would allow "virtually any new claim introduced in amended petition" under AEDPA to "relate back."
 

 Id.
 

 at 656-57
 
 ,
 
 125 S.Ct. 2562
 
 . After all, Justice Ginsburg explained, "federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto."
 

 Id.
 

 at 657
 
 ,
 
 125 S.Ct. 2562
 
 (citations omitted).
 

 ¶94 The
 
 Mayle
 
 Court also noted that a "majority" of federal circuit courts had adopted a much narrower standard than that embraced by the Ninth Circuit.
 

 Id.
 

 Under the majority view, relation back is allowed "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."
 

 Id.
 

 (citation omitted).
 

 ¶95 Justice Ginsburg's opinion for the Court embraced this majority view. It held that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."
 

 Id.
 

 at 659
 
 ,
 
 125 S.Ct. 2562
 
 (citations omitted). And it emphasized that the rule 15(c) standard must be defined in a way that "relaxes, but does not obliterate, the statute of limitations" in the operative statute (AEDPA).
 

 Id.
 

 (citation omitted).
 

 ¶96 The
 
 Mayle
 
 Court also connected its "common core of operative facts" test to longstanding federal case law. It cited a long string of federal court of appeals cases requiring an amended claim to arise from a single episode identified in the original complaint.
 
 See
 

 id.
 

 at 657-60
 
 ,
 
 125 S.Ct. 2562
 
 . And it explained that its approach was likewise consonant with the standard set forth in
 
 Tiller v. Atlantic Coast Line Railroad Co.
 
 ,
 
 323 U.S. 574
 
 ,
 
 65 S.Ct. 421
 
 ,
 
 89 L.Ed. 465
 
 (1945).
 

 ¶97
 
 Tiller
 
 is a counterpart to our
 
 Peterson
 
 case. It involved a tort claim against a railroad under the Federal Employers' Liability Act. The plaintiff "initially alleged various negligent acts," but then sought to file an amended pleading adding "a claim under the Federal Boiler Inspection Act for failure to provide the train's locomotive with a rear light."
 
 Mayle
 
 ,
 
 545 U.S. at 659
 
 ,
 
 125 S.Ct. 2562
 
 .
 
 Tiller
 
 "held that the amendment related back, and therefore avoided a statute of limitations bar, even though the amendment invoked a legal theory not suggested by the original complaint and relied on facts not originally asserted."
 

 Id.
 

 But the Federal Boiler Inspection Act claim nonetheless related back because "[t]here was but one episode-in-suit in
 
 Tiller
 
 "-"a worker's death attributed from the start to the railroad's failure to provide its employee with a reasonable safe place to work."
 

 Id.
 

 at 660
 
 ,
 
 125 S.Ct. 2562
 
 . Thus, the plaintiff in
 
 Tiller
 
 "based her complaint on a single 'occurrence,' an accident resulting in her husband's death."
 

 Id.
 

 But the
 
 Mayle
 
 Court emphasized that that standard was not met in the case before it, given that the petitioner "targeted separate episodes, the pretrial police interrogation of [a] witness ... in [the] original petition" and the petitioner's "own interrogation at a different time and place in [the] amended petition."
 

 Id.
 

 And it declined to find relation back under federal rule 15(c).
 

 ¶98 In so doing the
 
 Mayle
 
 Court also highlighted the effects of a contrary conclusion on the one-year limitations period set forth in AEDPA. It noted that "AEDPA's limitation period would have slim significance" under the Ninth Circuit's standard.
 

 Id.
 

 at 662
 
 ,
 
 125 S.Ct. 2562
 
 (citations omitted). And it emphasized that "it would be anomalous to allow relation back under" federal rule 15(c)"based on a broader reading of the words 'conduct, transaction, or occurrence' in federal habeas proceedings than in ordinary civil litigation."
 

 Id.
 

 at 663
 
 ,
 
 125 S.Ct. 2562
 
 .
 

 ¶99 These are all salient points. And in my view they cut strongly against the majority's fuzzy standard and in favor of a standard based on the plain language of rule 15(c). First and foremost, the
 
 Mayle
 
 opinion reinforces the fact that the settled, majority interpretation of "conduct, transaction, or occurrence" is incompatible with the approach adopted by our court today. Nobody in
 
 Mayle
 
 was arguing for a "same cause of action" test or a hazy "factual expansion" qualifier. Certainly none of the lower federal courts had embraced such a standard. Everyone understood the "conduct, transaction, or occurrence" test to require a focus on the
 
 specific factual circumstances
 
 set forth in the original complaint. The only question was how to define the relevant set of factual circumstances.
 

 ¶100 The
 
 Mayle
 
 Court, moreover, emphasizes the need to assure that the rule 15(c) standard does not override the operative statute of limitations. And it shows how the standard approach to "conduct, transaction, or occurrence" preserves a role for a statute of limitations applicable to post-conviction review claims.
 

 ¶101 The majority's standard here is perhaps narrower than that embraced by the Ninth Circuit in
 
 Mayle
 
 . But the court never clearly identifies the "conduct, transaction, or occurrence" that is relevant to our inquiry.
 
 [84]
 
 Instead it says that what really matters is that the new claim be the same "cause of action" (meaning the same legal theory of relief) as that asserted in the original complaint. And where that is so (as it often will be under the PCRA, in that the core claim arising under the PCRA is a claim for ineffective assistance of counsel), the court merely requires that the new claim be rooted in the "same kind of factual basis" as that set forth in the original petition.
 
 Supra
 
 ¶47.
 

 ¶102 The court's standard, however, is incompatible with the longstanding approach of the federal courts-an approach that was well settled by the time our Utah rule was adopted.
 
 See
 

 White v. Holland Furnace Co.
 
 ,
 
 31 F.Supp. 32
 
 , 34 (S.D. Ohio 1939) (discussing the amendments to the federal rule 15(c) and noting that "[t]he emphasis of the courts has been shifted from a theory of law as the cause of action, to the specified conduct of the defendant upon which the plaintiff tries to enforce his claim") (citing
 
 N.Y. Cent. R.R. v. Kinney
 
 ,
 
 260 U.S. 340
 
 ,
 
 43 S.Ct. 122
 
 ,
 
 67 L.Ed. 294
 
 (1922) ;
 
 United States v. Memphis Cotton Oil Co.
 
 ,
 
 288 U.S. 62
 
 ,
 
 53 S.Ct. 278
 
 ,
 
 77 L.Ed. 619
 
 (1933) ).
 
 [85]
 
 And the court's standard is fuzzy and ill-defined. We are told very little about what it means for a new claim to be rooted in the "same kind of factual basis" as that alleged in an earlier petition. The closest the court comes to elaborating on this standard is to say that it is enough for the new pleading to "expand" upon the facts of
 the earlier one.
 
 Supra
 
 ¶51. I have no idea where this standard comes from or what it will mean going forward. It seems aimed at opening the door for future courts to override the statute of limitations in our PCRA on the arbitrary ground that an entirely new set of circumstances is merely an "expansion" of the facts in the original pleading.
 

 ¶103 The court's standard, moreover, will presumably apply outside the PCRA. Because we have never before interpreted the terms of rule 15(c) the majority opinion in this case will set the standard for relation back for any of a range of claims. And so long as a new claim happens to state the same "cause of action" as that advanced in a prior complaint, the new claim will relate back so long as it has a "factual basis" that "expands" upon the initial pleading.
 

 ¶104 The court's standard sets a new course for our law under rule 15(c). I am unsure how it will play out in the future. But it seems sure to bring unrest and uncertainty to this important area of Utah procedure.
 
 [86]
 

 C. Application of the Rule 15(c) Test to this Case
 

 ¶105 For the above reasons I would apply a standard dictated by the plain language of rule 15(c). I would hold that an amended claim relates back to an earlier complaint only where it arises out of the same "conduct, transaction, or occurrence" set forth previously. And I would define that standard as a long line of federal courts have-to focus on the factual circumstances giving rise to the claim, without regard to whether the claim is rooted in the same legal theory as asserted previously.
 

 ¶106 I would hold that a new claim relates back to an earlier one only where it arises from the same core of operative facts alleged in the original complaint. And I would clarify that it does not relate back where it arises from facts that were "distinct in time and place" from that alleged in the first pleading.
 
 See
 

 supra
 
 ¶31 & n.5.
 

 ¶107 I would also affirm the district court's decision under this standard. I would hold that Noor's new claim for ineffective assistance of counsel does not relate back to the original petition because the new claim arose from an occurrence that was "distinct in time and place" from that alleged in the petition.
 

 ¶108 Noor's original claim for ineffective assistance of counsel arose out of his counsel's failure to appreciate the language and culture barriers to Noor's interactions with the victim of his crimes. The amended petition had a different focus. It arose out of alleged barriers to Noor's effective communication with his trial attorney. Thus, the second pleading is in some sense a factual expansion of the first-insofar as it deals with a completely new set of facts. But the two claims did not arise out of the same conduct, transaction, or occurrence. They focused on two very different relationships that were "distinct in time and place" (and actor).
 
 [87]
 

 ¶109 The amended claims at issue here accordingly do not arise from the same conduct, transaction, or occurrence set forth in the original complaint. And for that reason they cannot relate back to the original petition. I would so hold. I would affirm the district court on the ground that Noor's amended claims are barred by the statute of limitations set forth in the PCRA.
 

 III
 

 ¶110 The standard in rule 15(c) is straightforward. A claim in an amended pleading relates back to an earlier pleading if both arise from the same "conduct, transaction, or occurrence." The majority distorts that standard by allowing relation back so long as a new claim alleges the same kind of cause of action as that in an earlier pleading and expands upon the facts laid out therein. I dissent because this new standard is incompatible with our rule. I also fear that it will lead to arbitrary results going forward.
 

 ¶111 There is a sense in which it could be said that both of Noor's claims arose out of a common "transaction." If the relevant transaction is defined as
 
 Noor's trial
 
 then any claim for ineffective assistance at trial arose out of that transaction. That cannot be the relevant transaction for purposes of a PCRA claim for ineffective assistance under rule 15(c), however. The PCRA requires that any post-conviction claim for ineffective assistance be asserted within one year. UTAH CODE § 78B-9-107. And rule 15(c) must be interpreted in a manner that preserves some application of that statute of limitations.
 
 Cf.
 

 Mayle v. Felix
 
 ,
 
 545 U.S. 644
 
 , 657, 659,
 
 125 S.Ct. 2562
 
 ,
 
 162 L.Ed.2d 582
 
 (2005) (rejecting the trial-as-the-transaction concept because "virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature" and thus would "obliterate[ ] the statute of limitations"). We thus cannot conclude that the trial was the relevant transaction, or that the claim at issue here relates back because it arose out of that transaction.
 

 ¶112 The majority stops a half-step short of identifying the relevant transaction at that level of generality. But it adds a gloss that is not compatible with the text of rule 15(c), and that will distort the development of our law in this field. I respectfully dissent on that basis.
 

 The majority seems to try to walk this back at a couple of places in the opinion. In footnote 62, for example, the court says that it has "not suggested" that it is "limiting amendments permissible under rule 15(c) to those that assert the same 'legal theory' as the original pleading."
 
 Supra
 
 ¶48, n.62. Fair enough. The court doesn't strictly limit amendments under rule 15 to those based on the same legal theory. But it certainly highlights this as a factor of relevance to its analysis.
 
 See
 

 supra
 
 ¶48 (noting Noor "did not change the legal theory" from his original petition);
 
 id.
 
 ¶54 (listing "same legal theory" as a factor weighing in favor of relation back). And I see no basis for that in rule 15(c).
 

 The "conduct, transaction, or occurrence" test was first introduced as a matter of federal procedure in 1937, when the Federal Rules of Civil Procedure were adopted. Fed. R. Civ. P ., Historical Note (2012). And the test was first imported into Utah law in 1950, when we adopted the first version of our Utah Rules of Civil Procedure.
 
 See
 
 Utah R. Civ. P . 15(c) (1950) ("Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.").
 

 The majority seeks to avoid this problem by asserting that our subsequent cases have somehow transformed the
 
 Peterson
 
 standard into an interpretation of a rule promulgated decades later.
 
 See
 

 supra
 
 ¶39 nn.38,39 (citing
 
 Behrens v. Raleigh Hills Hosp., Inc.
 
 ,
 
 675 P.2d 1179
 
 , 1182 (Utah 1983) ;
 
 Hjorth v. Whittenburg
 
 ,
 
 121 Utah 324
 
 ,
 
 241 P.2d 907
 
 , 908 (1952) ). But I see nothing in the cited cases to support that view. In
 
 Behrens
 
 we made no attempt to analyze
 
 Peterson
 
 .
 
 See
 

 Behrens,
 

 675 P.2d at 1183
 
 . Nor did we engage with-much less analyze-the text of Rule 15(c).
 

 Id.
 

 So I see no way to read our passing reference to
 
 Peterson
 
 as a decision to "rel[y] upon
 
 Peterson
 
 for our interpretation" of rule 15(c). The
 
 Hjorth
 
 case provides even less support for the majority's view. I find no reference to
 
 Peterson
 
 whatsoever in
 
 Hjorth
 
 .
 

 See
 

 Tucker v. State Farm Mut. Ins. Co.
 
 ,
 
 2002 UT 54
 
 , ¶ 7 n.2,
 
 53 P.3d 947
 
 (noting that precedent interpreting federal rules "are persuasive where the Utah Rules of Civil Procedure are 'substantially similar' ");
 
 Drew v. Lee
 
 ,
 
 2011 UT 15
 
 , ¶ 16,
 
 250 P.3d 48
 
 ("Because the Utah Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, where there is little Utah law interpreting a specific rule, we may ... look to the Federal Rules of Civil Procedure for guidance.") (citation omitted).
 

 The majority seeks to rehabilitate its approach-and to criticize mine-by pointing to a different clause in rule 15(c). It notes that rule 15(c)"states that not only will an amendment relate back to the date of the original pleading when the amendment asserts a claim that arose out of the conduct[,] transaction[,] or occurrence set out in the original pleading, but that an amendment will also relate back when the claim asserted 'arose out of the conduct, transaction, or occurrence ...
 
 attempted to be set out
 
 ... in the original pleading.' "
 
 Supra
 
 ¶53 (alteration in original). The majority chides me for failing to consider this language. And it asserts that the "attempted to be set out" language "requires a liberal reading" of the rule that supports its approach.
 
 Id.
 

 I beg to differ. The quoted language does not enlarge the scope of what counts as the relevant "conduct, transaction, or occurrence." It just says that an amendment should relate back even if the original complaint was inartfully drafted in its attempt to lay out the relevant facts. It is thus inconsistent with the text of the rule to read the "attempted to be set out" language as mandating a liberal reading of
 
 what
 
 was attempted to be set out. This requires leniency only in assessing
 
 how
 
 it was set out.
 

 See, e.g.
 
 ,
 
 United States v. Craycraft
 
 ,
 
 167 F.3d 451
 
 , 457 (8th Cir. 1999) ("If the ineffective conduct alleged by [petitioner] in his first petition cannot be said to have arisen out of the same set of facts as his amended claim, his amendment cannot relate back ....");
 
 Holmes v. Greyhound Lines, Inc.
 
 ,
 
 757 F.2d 1563
 
 , 1566 (5th Cir. 1985) (concluding that an amended claim did not relate back because that claim was "based on entirely different facts");
 
 Santana v. Holiday Inns, Inc.
 
 ,
 
 686 F.2d 736
 
 , 739 (9th Cir. 1982) ("Once the defendant is in court on a claim arising out of a particular transaction or set of facts, he is not prejudiced if another claim, arising out of the same facts, is added.");
 
 Wiren v. Paramount Pictures
 
 ,
 
 206 F.2d 465
 
 , 468 (D.C. Cir. 1953) (concluding that an amended claim did not arise out of the same conduct, transaction, or occurrence even though the subsequent conduct "grew out of" the original pleading because it was "independent and distinct").
 

 See, e.g.
 
 ,
 
 Idaho Power Co. v. United States
 
 ,
 
 105 Fed.Cl. 141
 
 , 146 (2012) ("[I]t does not matter whether the new claim is premised on a legal theory different from the one set out in the original complaint." (citations omitted) );
 
 Kuba v. Ristow Trucking Co., Inc.
 
 ,
 
 811 F.2d 1053
 
 , 1055 (7th Cir. 1987) (concluding that an amendment to include treble damages related back to the original negligence claim because res judicata would preclude the prosecution of both claims in separate actions);
 
 Johansen v. E.I. Du Pont De Nemours & Co.
 
 ,
 
 810 F.2d 1377
 
 , 1380 (5th Cir. 1987) (concluding that the amended complaint for breach of implied and express warranty related to the original products liability claim even though the theory of recovery was wholly different);
 
 White v. Holland Furnace Co.
 
 ,
 
 31 F.Supp. 32
 
 , 34 (S.D. Ohio 1939) ("To give effect to Rule 15(c), ... the Court should allow an amendment of a pleading where the factual situation was not changed though a different theory of recovery is presented.").
 

 6A Charles Alan Wright et al., Federal Practice and Procedure § 1497 (3d ed. 2018) (noting that "[j]udicial opinions occasionally have recited mechanical tests in an attempt to determine whether a particular amendment should relate back," such as by asking whether a "judgment on the claim set forth in either pleading" would "bar an independent action on the other," whether "the same evidence" would "support both the original and amended pleadings," and whether the "measure of damages" is "the same in each case"; and concluding that "[a]lthough each of these formulations expresses a relevant factor, none of them fully embraces the philosophy of Rule 15(c)" (citations omitted) ).
 

 Oja v. U.S. Army Corps of Eng'rs
 
 ,
 
 440 F.3d 1122
 
 , 1134 (9th Cir. 2006) (concluding that the amended complaint does not relate back to the earlier complaint because the acts of disclosure were "distinct in time and place");
 
 see also
 

 Phelan v. City of Chicago
 
 ,
 
 125 F.Supp.2d 870
 
 , 877 (N.D. Ill. 2000),
 
 aff'd
 
 ,
 
 347 F.3d 679
 
 (7th Cir. 2003) (concluding that "separate employment actions at different times by different City departments involving different jobs do not constitute the 'same conduct, transaction or occurrence' under Rule 15(c)(2)");
 
 United States v. Hicks
 
 ,
 
 283 F.3d 380
 
 , 388 (D.C. Cir. 2002) (holding that "Rule 15(c) does not apply where the [petitioner's] proposed amendment makes claims or is based on occurrences 'totally separate and distinct, "in both time and type" from those raised in his original motion' " (quoting
 
 United States v. Espinoza-Saenz
 
 ,
 
 235 F.3d 501
 
 , 505 (10th Cir. 2000) &
 
 Craycraft
 
 ,
 
 167 F.3d at
 
 457 ) );
 
 Nat'l Distillers & Chem. Corp. v. Brad's Mach. Prods., Inc.
 
 ,
 
 666 F.2d 492
 
 , 496 (11th Cir. 1982) (concluding that the additional claims in the amendment did not relate back to the original complaint because the allegations "were separate and distinct from the price fixing violations alleged in the original complaint").
 

 The majority does not cite such a case-or any support for this notion. Instead it seeks to frame my proposed standard as the substantial equivalent of the one it applies-asserting that "[t]here is little, if any" real distinction between our standards except perhaps "word choice."
 
 Supra
 
 ¶47, n.61. I see the matter differently. My approach admittedly looks at "the factual circumstances giving rise to the claim."
 
 Id
 
 . But the factual circumstances I would consider are set forth in the text of rule 15(c) -the "conduct, transaction, or occurrence" giving rise to the claim. Utah R. Civ. P . 15(c)(2). The majority's test is much broader, and less definite. And it considers (in some unspecified way) whether the proposed amendment "expand[s] or modif[ies] the original cause of action stated."
 
 Supra
 
 ¶47 n.57. This is a far less determinate inquiry than the one I would embrace.
 

 At one point the majority implies that Mr. Noor's entire trial could qualify as the "same time and place" for purposes of rule 15(c) analysis.
 
 Supra
 
 ¶52. Elsewhere it says that the relevant "core fact" giving rise to both sets of claims is the fact that "his counsel failed to present argument based on [Noor's] inability to understand English."
 
 Supra
 
 ¶47 n.61. Neither of those views of the relevant "conduct, transaction, or occurrence" is tenable. The first is the same untenably broad approach embraced by the Ninth Circuit in
 
 Mayle
 
 (and rejected by the Supreme Court). And the second underscores the fact that the majority is allowing widely disparate events to relate back under the guise of "factual expansion" instead of focusing on the same "conduct, transaction, or occurrence." The "conduct, transaction, or occurrence" giving rise to Noor's first claim involved Noor's interactions with the victim of his crimes.
 
 See
 

 supra
 
 ¶50. And the "conduct, transaction, or occurrence" giving rise to his amended claim was very different. This claim arose out of events at a different time and place and involving different actors-Noor's interactions with his trial counsel.
 
 Id.
 

 The majority seeks to undermine my approach on the ground that the federal standard that I embrace "did not exist" at the time of Rule 15(c) 's adoption.
 
 Supra
 
 ¶43 n.51. But these and other cases put that notion to rest. My approach is not to "strictly" interpret rule 15(c).
 
 Supra
 
 ¶56. It is to interpret it fairly, in light of the language of the federal rule that we imported into our Utah rule. And we cannot interpret this language without considering the federal counterpart to our Utah rule.
 

 The majority seeks to avoid these and other problems by pointing to Mr. Noor's immigration status, his lack of English proficiency, and his
 
 pro se
 
 status.
 
 Supra
 
 ¶57. Yet it nowhere explains how these considerations affect the standard that it applies-except to suggest that we should be "lenient" to
 
 pro se
 
 litigants and give a "liberal" interpretation to motions to amend under rule 15.
 

 Supra
 

 ¶51 n.64. And I fail to see the salience of the majority's concerns. Certainly I bear some human sympathy for those who are left to navigate the legal system without either counsel or proficiency in the predominant language of our culture. Yet to my knowledge we have never cited those concerns as grounds for altering our view of the law-or its application to a
 
 pro se
 
 party. We can be lenient to unrepresented parties by giving them the benefit of the doubt in the interpretation of their legal filings. That is all the leniency that our law has called for.
 
 See
 

 McNair v. State
 
 ,
 
 2014 UT App 127
 
 , ¶ 12,
 
 328 P.3d 874
 
 (noting that a "pro se document 'is to be liberally construed' " to excuse "inartful[ ] plead[ing]" (internal quotations and citations omitted) ).
 

 But the problem here is not an ambiguity in or failure of pleading. It is in the interpretation of rule 15(c) and its application to this important case. And I fear that a goal of solicitude for Mr. Noor may invoke the maxim that hard facts make bad law.
 
 See
 

 N. Sec. Co. v. United States,
 

 193 U.S. 197
 
 , 364,
 
 24 S.Ct. 436
 
 ,
 
 48 L.Ed. 679
 
 (1904) (Holmes, J. dissenting) ("Great cases, like hard cases, make bad law.").
 

 The majority challenges this conclusion on the ground that Noor alleged in both petitions "that his trial counsel was ineffective
 
 at trial
 
 for failing to argue the significance of his inability to understand English."
 
 Supra
 
 ¶52. It also emphasizes that Noor's focus in both petitions was "trial counsel," that his "cause of action" in both cases was a claim for "ineffective assistance of counsel," and that the "time and place" where both claims arose was at "trial."
 
 Id
 
 . This just underscores the problematic nature of the majority's inquiry-and its incompatibility with the text of rule 15(c). If trial counsel is the relevant "actor" and the relevant "transaction" is the trial then few, if any, ineffective assistance claims will fall outside of rule 15(c). The only limiting factor will be the ability to identify a way to frame the new pleading as a simple "expansion" of the earlier. And most any enterprising lawyer can find some plausible way of doing so.